The JACKSON STATE BANK, a Wyoming Banking Corporation, Appellant (Plaintiff below),

v.

Joan J. BECK, Appellee (Defendant below),

David P. Beck, (Defendant below).

No. 4816.

Supreme Court of Wyoming.

April 6, 1978.

W. Keith Goody, Jackson, for appellant.

Ted Frome, Afton, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

McCLINTOCK, Justice.

The Jackson State Bank, a Wyoming corporation,[1] appeals from summary judgment entered in the district court of Teton County, Wyoming, dismissing its action to recover deficiency claimed to exist after liquidation of collateral pledged as security for the notes. The collateral was sold by the bank to itself and $50,000.00 credited upon the notes, leaving an alleged balance of $29,-160.69, which sum, together with interest, attorney fees and costs the bank sought to recover from David P. Beck and Joan J. Beck,[2] endorsers of the note of Jackson Hole Motors. Both plaintiff and defendant moved for summary judgment and that of the defendant was sustained in an order containing findings of fact, conclusions of law and order of dismissal. The principal basis of the dismissal was that the bank had failed to allege and prove its "compliance

1. Hereinafter referred to as plaintiff or the bank.

2. Only Joan filed an answer, among other things claiming failure to comply with the Wyoming Uniform Commercial Code, and she will be referred to as defendant or by name.

with Sec. 34–9–504(3), Wyoming Statutes, 1957, as amended [now § 34–21–963(c) W.S. 1977], or any sale excepted from such statutes." We shall affirm.

The transaction was a typical commercial loan to Jackson Hole Motors, with Mr. and Mrs. Beck as endorsers of the notes, and the security consisted of parts, inventory, used vehicles, tools, equipment, furniture and fixtures owned by the company. Jackson Hole Motors is apparently defunct and was not named in the action. David P. Beck was served by publication and defaulted in the action although no judgment is shown to have been entered against him.

On August 12, 1971 the bank gave notice of repossession in which it advised the Becks that it had elected to declare the Becks and the company in default and to claim absolute title by operation of law and the reservations contained in the security agreement and financing statement, describing the property so repossessed. By notice dated August 26, 1971 and service of which upon the Becks and the company is acknowledged by their endorsement on the notice, the bank further gave notice that "after the 31st day of August, 1971, all collateral subject to Security Agreements between David P. Beck, Joan J. Beck or Jackson Hole Motors, the above-named Debtors, and The Jackson State Bank, will be sold at private sale, pursuant to the Uniform Commercial Code." The property is then again described.

It is conceded that there was no attempt to sell at public sale and the sale to the bank itself was apparently consummated by making an entry upon one of the notes that $50,000 had been applied to principal on September 7, 1971. According to the affidavit of Felix Buchenroth, president of the bank, this "represents the application of the proceeds of the sale" to the bank, which sale is described in the same affidavit as "a private sale on or after August 31, 1971, but before September 7, 1971, for $50,000.00."

Apparently conceiving that it could not legally enter into business as auto dealer and repairer, the bank then transferred all of the collateral so repossessed and sold it

to a corporation formed and managed by two officers of the bank. The business was conducted as a going business for a time and the testimony of the bank officers is that this resulted in a liquidation of the collateral for about $18,000, considerably less than the amount credited through the original sale by the bank to itself. While the bank officials stated that they were motivated only by a desire to secure the best possible prices for the collateral, we find that motive is not the crux of the problem.

Section 34–21–963(c), W.S.A.1977, a part of the Wyoming Uniform Commercial Code, provides:

"(c) Disposition of the collateral may be by public or private proceedings and may be made by way of one (1) or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms *but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable.* Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, and except in the case of consumer goods to any other person who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this state or who is known by the secured party to have a security interest in the collateral. *The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale.*" (Emphasis added)

Counsel for the bank frankly, and we think properly, concedes that the sale violated the provisions of the commercial code, see *Community Management Association of*

*Colorado Springs, Inc. v. Tousley*, 32 Colo. App. 33, 505 P.2d 1314, 1315 (1973) holding that "[r]epossessed automobiles are not collateral of a type sold on a recognized market within the meaning of C.R.S.1963, 155–9–504(3)"; *Beneficial Finance Co. of Black Hawk County v. Reed*, Iowa, 212 N.W.2d 454, 458 (1973); *Nelson v. Monarch Investment Plan of Henderson, Inc.*, Ky., 452 S.W.2d 375, 376 (1970); *Norton v. National Bank of Commerce of Pine Bluff*, 240 Ark. 143, 398 S.W.2d 538 (1966).[3] In the later case of *Carter v. Ryburn Ford Sales, Inc.*, 248 Ark. 236, 451 S.W.2d 199 (1970) the Arkansas court refers to its earlier decision in *Norton* and rejects the argument that NADA books provided "a widely distributed standard price quotation." [4]

■ We must reject counsel's argument that notwithstanding the fact that the bank itself purchased at the private sale, thereby justifying the trial court in finding that the bank had violated the commercial code, the court was nevertheless in error in finding that the bank operated in a commercially unreasonable fashion.[5] We find this argument undecisive of the real issue in the case. As said by the Supreme Court of Iowa,

> "Even if we were to agree with plaintiff's contention that its sale of defendant's automobile was commercially reasonable, which we do not, the provision of section 554.9504(3) that 'every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable', does not affect

the requirement of notice demanded by this section." *Beneficial Finance Co. of Black Hawk County v. Reed*, supra, 212 N.W.2d at 458–459.

In *Nelson v. Monarch Investment Plan of Henderson, Inc.*, supra, 452 S.W.2d at 376, also dealing with the matter of notice, the court specifically found that there was nothing in the record to indicate lack of good faith, unfairness or fraud, and upon that basis found that the sale had been commercially reasonable, but nevertheless found that such condition "does not affect the requirement of notice."

■ We would make the point that a secured creditor who purchases the collateral from himself, unless he can bring himself within the "recognized market" or "standard price quotation" exceptions, is in the same direct violation of the requirements of the statute as is the creditor who fails to give notice. The courts are not in agreement concerning the penalty that is to be imposed upon the creditor in such situation. The Supreme Court of Georgia in *Gurwitch v. Luxurest Furniture Manufacturing Company*, 233 Ga. 934, 214 S.E.2d 373 reversed the decision of the Court of Appeals of Georgia in *Luxurest Furniture Manufacturing Company v. Furniture Warehouse Sales, Inc.*, 132 Ga.App. 661, 209 S.E.2d 63 (1974), which had held that notwithstanding violation of the commercial code the creditor was entitled to recover any deficiency between the contract price and the net pro-

---

**3.** " * * * [A] 'recognized market' might well be a stock market or a commodity market, where sales involve many items so similar that individual differences are nonexistent or immaterial, where haggling and competitive bidding are not primary factors in each sale, and where the prices paid in actual sales of comparable property are currently available by quotation." 398 S.W.2d at 540.

**4.** " * * * [T]he undisputed proof furnished by appellee's own witnesses is that the book is merely a guide to the price of a vehicle of that year, make and model in an average condition. Consequently we hold that a secured party is not complying with the Commercial Code when he purchases a used

automobile at his own private sale." 451 S.W.2d at 203.

**5.** In *Barber v. LeRoy*, 40 Cal.App.3d 336, 115 Cal.Rptr. 272, 277 (1974) the court enumerates various burdens imposed on a secured creditor seeking a deficiency and with reference to a statute much like ours, concludes:

> " * * * The reasons for these rules seem too obvious to require discussion. Certainly it cannot be said that when a security holder purchases at his own private sale in violation of the express prohibition of section 9504(3) that the sale has been conducted in a 'commercially reasonable manner.' "

In other words, violation of a specific statute is commercially unreasonable as a matter of law.

ceeds realized from a proper foreclosure sale.[6] The Georgia Supreme Court said:

"One noted commentary has this to say about the issue before us: 'The judicial response to the misbehaving creditor who seeks a deficiency judgment spans the spectrum of possible results. On one end of the scale, *Skeels v. Universal CIT Credit Corp.* [D.C. 222 F.Supp. 696 (1963)] in Pennsylvania, and *Braswell,* [supra][7] in Georgia stand clearly and unequivocally for the proposition that a creditor who violates the provisions of Part Five [of Art. 9] loses his right to a deficiency. The decisions in the other Georgia cases are more equivocal, but they also arrive at the same result. Other cases simply allow the deficiency subject to whatever set-off the debtor can prove as a result of the improper sale. * * *' White & Summers, Uniform Commercial Code, § 26–15, pp. 1005, 1006 (1972).

" * * * Compliance with Code Ann. § 109A–9—504(3) is a condition precedent to recovery of any deficiency between the sale price of the collateral and the amount of the unpaid balance. Therefore, the judgment of the Court of Appeals reaching a different result on this issue is reversed."

In *Barber v. LeRoy,* 40 Cal.App.3d 336, 115 Cal.Rptr. 272, 277 (1974), it is said:

" * * * [C]ases from other states interpreting comparable sections of the uniform commercial code have held that the secured party who conducts a sale of collateral has the burden of proving compliance with section 9504(3) [citing cases]."

and

" * * * The out-of-state cases hold that a secured party who does not allege and prove compliance with the statutory requirements is prohibited from collecting a deficiency judgment." 115 Cal.

Rptr. at 277, citing particularly *Vic Hansen & Son, Inc. v. Crowley,* 57 Wis.2d 106, 203 N.W.2d 728, 59 A.L.R.3d 360 (1973); *Leasco Data Processing Equipment Corporation v. Atlas Shirt Company, Inc.,* 66 Misc.2d 1089, 323 N.Y.S.2d 13 (1971).

In the latter case the judge of the Civil Court of the City of New York makes this pertinent observation (323 N.Y.S.2d p. 17):

"The burden on the secured creditor is by no means onerous. If he wishes a deficiency judgment he must obey the law, the relevant provisions of which are now simpler and more flexible than before. If he does not obey the law he may not secure a deficiency judgment."

We think that our court, in *Aimonetto v. Keepes,* 501 P.2d 1017, 1019 (1972) elected to concur with those cases holding that failure to proceed according to the statute resulted in loss of the deficiency. It is there said:

" * * * [W]e are persuaded that one general principle upon which plaintiffs rely is applicable here, that is, compliance with § 34–9–504(3) is a condition precedent to recovery of any deficiency between sale price of collateral and the amount of the unpaid balance."

We find the judgment of the lower court to be correct and therefore affirm.

---

6. The court of appeals had held the collateral not to be of a type customarily sold in a recognized market, construing the term to mean collateral "where value at any given time can be readily ascertained, as in the case of stocks and bonds or other negotiable instruments." The error of this court lay in permitting a

deficiency judgment for the difference between the contract price and the full dollar amount of the repossessed furniture.

[7] *Braswell v. American National Bank,* 117 Ga. App. 699, 161 S.E.2d 420 (1968).