James Albert COONES, Appellant (Defendant),

v.

FEDERAL DEPOSIT INSURANCE COR-PORATION, as Liquidator for the First National Bank of Sheridan, and as Re-ceiver of the Stockmen's Bank and Trust Company, Appellee (Plaintiff).

James Albert COONES, Appellant (Plaintiff),

v.

FEDERAL DEPOSIT INSURANCE COR-PORATION, as Receiver for Stock-men's Bank and Trust Company, Appel-lee (Defendant).

James Albert COONES, Cindy Lee Coones, f/k/a Cindy Lee Jones, and Randy L. Royal, Bankruptcy Trustee for the estate of Cindy Coones, Appel-lants (Defendants),

v.

FEDERAL DEPOSIT INSURANCE COR-PORATION, as Liquidator for the First National Bank of Sheridan and as Re-ceiver of the Stockman's Bank & Trust Company, Appellee (Plaintiff).

Nos. 91–265, 92–90 and 92–136.

Supreme Court of Wyoming.

March 11, 1993.

Stephen R. Winship of Donald R. Winship & Associates, P.C., Casper, for appellants.

Timothy C. Kingston and Jeanne R. Lee, Denver, CO, for appellee.

* Retired January 1, 1993.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ.

URBIGKIT, Justice, Retired.

These three commercial litigation appeals, consolidated for one decision, present creditors' rights, debtor protection and replevin issues. A convoluted course of litigation pursued through various state and federal courts has developed into a myriad of issues and proceedings, contesting jurisdiction, procedural matters and substantive decisions.

The dispute centers on the attempts of the creditors' successor, the Federal Deposit Insurance Corporation (FDIC), to collect after a debtor's default on three promissory notes. James A. Coones (Coones) is the remaining maker of the notes from whom recovery is sought. The three appeals before this court primarily challenge a summary judgment which was granted in favor of the FDIC. The summary judgment granted a personal judgment on the entire debt and possession of the collateral with writs of replevin issued both pre- and post-judgment. Also challenged are a post-judgment order permitting intervention of a third party and directing the sequestering and releasing of funds acquired as sales proceeds from items of collateral and a motion to dismiss sustained against Coones on an agister's lien action arising from his claim for maintenance of the livestock chattel security during litigation.

We affirm in part and reverse in part.

## I. PROCEDURAL DISPOSITION AND ISSUES

With the complex issues presented and for the sake of some continuity, we find it necessary to begin with a description of the character of the individual actions from which the appeals before this court originated. We will follow each with an enumeration of the issues contended by the litigants.

On April 20, 1990, the FDIC filed Civil Action No. 17324, *Federal Deposit Insurance Corp. v. Coones,* in the Campbell County, Wyoming district court. Claiming that the makers, Coones and Cindy Lee Coones had defaulted on a total of four promissory notes, this action, although filed in Campbell County, was directed to both foreclose a real estate mortgage on property located in Sheridan County, Wyoming and to obtain judgment on chattel security which also secured some of the note balances. As the liquidator or receiver, the FDIC was the successor in interest to two failed Wyoming banks which were the original creditors. The complaint included a prayer requesting immediate possession and return of the collateral and for a judgment in replevin. The FDIC also sought to obtain personal judgment on the total balance owed on the promissory notes. It was not clear on the face of the complaint if these were alternative remedies.

After more than a year of motions, cross-motions, temporary and preliminary restraining orders and other proceedings, this increasingly complex litigation came to "resolution" by an order on summary judgment dated October 21, 1991.[1] The summary judgment, in favor of the FDIC, granted the FDIC possession of the collateral, a contingent personal judgment against Coones for the collateral's assessed value and a personal judgment against Coones for the total amount of all debt owed on three of the notes. The district court denied Coones' motion for partial summary judgment, denied the FDIC's motion to dismiss the counterclaim based primarily on a claimed livestock maintenance agister's lien and certified that no just cause for delay existed, permitting an immediate appeal. W.R.C.P. 54(b).[2] An interim decision of the district court had eliminated the issue of the simultaneous real estate foreclosure on the fourth note with a ruling that the proper venue for that proceeding was in Sheridan County where the real estate was situate. That litigation remains somewhere beyond our current purview.

A copy of this summary judgment was not furnished to the debtor or his attorney. Coones and his counsel learned of the judgment's terms when the sheriff arrived with the writ of replevin, issued post-judgment, directing the officer to take possession of the livestock and equipment collateral. This is somewhat like the 4:00 a.m. no-knock search warrant execution in a drug raid case. The writ was one of four issued post-judgment which, in extended scope, addressed property found in Wyoming and in South Dakota.[3]

1. The "Order (1) Granting Plaintiff's Motion for Summary Judgment, (2) Denying Defendants' Motion for Partial Summary Judgment And (3) Denying Plaintiff's Motion To Dismiss" is located in Volume V of the record on appeal on page 962. The record, however, does not end there. An additional six volumes of further proceedings have been certified to this court as part of the three consolidated actions. Included in this collection are materials developed after a remand to the Sixth Judicial District Court, Campbell County, "for the limited purpose of settling the record." Even the limited remand and subsequent appeals apparently did not permit the parties to agree on the contents of the record on appeal. The FDIC submitted at oral argument a document styled as an "Affidavit of Authentication" which purports to include copies of the sale of collateral notices sent to Coones and Cindy Lee Coones. The notice sent to Coones was already of record in this proceeding.

2. W.R.C.P. 54(b) states:
   *Judgment upon multiple claims or involving multiple parties.*—When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

3. The FDIC admitted it will not try to enforce the writ of replevin for the collateral in South Dakota. In briefing, the FDIC, without citation to any information contained in the record on appeal, states that the "District Court of the

Following that method of notice that a judgment had been entered, Coones filed a motion for relief on November 7, 1991. Coones argued that the order was not final since the counterclaim remained pending and no right to exemption, or a hearing thereon, had been given for any property which might be claimed to be exempt from replevin.

With various intermediate pleadings involving courts in both South Dakota and Wyoming, an order granting an amended order nunc pro tunc was entered December 9, 1991, which refused to stay the replevin action or chattel sale but did require the FDIC to immediately issue to Coones a notice of a right to claim exemptions and a hearing under Wyo.Stat. § 1–15–107 (1988). The district court also ordered the promissory notes be canceled as "merged in [the] judgment."

The amended order nunc pro tunc was itself amended by another order issued on March 9, 1992. This amendment acknowledged the now divorced Cindy Lee Coones' discharge in bankruptcy on August 22, 1990. *In re Cindy Lee Coones*, No. 90–00318–A Discharge of Debtor (Bankr.Wyo. Aug. 22, 1990). Under terms of the amended order of the state court, the judgment against Cindy Lee Coones extended only to the FDIC's "right to foreclose on the collateralized property listed in the December 9, 1991 Amended Order and on any other property given by Cindy Coones as collateral * * *." [4] As with the original judgment

order, the order to amend order was not served on Coones.[5]

A notice of appeal was filed by Coones which stated:

NOTICE is hereby given that James Albert Coones, one of the Defendants in the above-entitled civil action, hereby appeals tò the Supreme Court of the State of Wyoming from the final judgment entitled "Order (1) Granting Plaintiff's Motion for Summary Judgment, (2) Denying Defendants' Motion for Partial Summary Judgment and (3) Denying Plaintiff's Motion to Dismiss" entered herein on October 22, 1991.

In his statement of the issues from this portion of the litigation, Appeal No. 91–265, Coones as appellant, debtor, questions:

1. Whether the Summary Judgment allows Plaintiff a double recovery.

2. Whether the District Court erred in denying Defendant's Motion for Partial Summary Judgment.

3. Whether there were material facts in dispute at the time that Plaintiff's Motion for Summary Judgment was granted.

4. Whether the District Court erred in granting Plaintiff's Motion for Summary Judgment.

5. Whether the Defendant should have been given a hearing on his exemption claims prior to the sale of his property.

---

Eighth Judicial Circuit, County of Lawrence, South Dakota ordered that proceeds held by the St. Onge Livestock Auction, generated from the sale of some of Coones' livestock on October 26, 1990 at that auction, be deposited in escrow accounts. Pursuant to the South Dakota court's Order, these funds were deposited in Key Bank of Gillette, Wyoming. The transfer of the funds from South Dakota to the Wyoming bank took place with [Coones] agreement. These cash proceeds totalled approximately $216,000.00." In a motion to distribute proceeds, filed by the FDIC on May 4, 1992, the FDIC asked the Sixth Judicial District Court, Campbell County, to order the distribution of $231,933.89 being held in an interest bearing escrow account. The money was identified as the proceeds of the South Dakota livestock sale. The nearly $16,000 discrepancy is never explained by the FDIC, but may be earned interest on the escrow account.

**4.** Cindy Lee Coones has not appealed from the district court's amended order and is not a party to these appeals. She found a Chapter Seven bankruptcy discharge and a divorce court decree solution to her participation in the litigation.

**5.** The district court, in a letter dated April 9, 1992, acknowledged that both the original judgment and the order amending the order nunc pro tunc were not properly served. The district court said the failure was due to errors within the Clerk of the District Court's office. The district court also issued a memorandum to the Clerk of the District Court, which was entered into the record of this case, emphasizing the direction that copies of all orders be properly served.

6. Whether the Sixth Judicial District Court had jurisdiction over the subject matter of this case.

7. Whether the District Court erred in denying Defendant's Motion to Dismiss.

8. Whether the District Court erred in denying Defendant's Motion for Peremptory Disqualification.

Appellee, the FDIC, restates:

1. Did the district court's grant of summary judgment allow the FDIC double recovery?

2. Does this Court have appellate jurisdiction of the Appellant's claim that the FDIC's post-judgment disposition of collateral was wrongful?

3. Was there reversible error in the post-judgment disposition of collateral?

4. Did the district court err in granting the FDIC's Motion for Summary Judgment?

5. Did the FDIC have a security interest in the Appellant's after acquired cattle?

6. Did the Appellant's Counterclaim preclude summary judgment?

7. Should the district court have granted the Appellant's Motion for Partial Summary Judgment?

8. Did the district court err in granting the FDIC's request for attorney's fees and costs?

9. Was the Appellant denied his right to claim exemptions?

10. Did the district court err in denying the Appellant's Motion for Disqualification?

11. Did the FDIC fail to file the originals of the promissory notes with the district court?

12. Did the district court have jurisdiction of this case?

With Appeal No. 91–265 pending, this litigation continued in district court. Appeal No. 92–136 was filed in the aftermath of a consolidated hearing in the district court. The hearing considered four issues. First, a motion from the FDIC requesting the distribution of $231,933.89 in proceeds from a cattle sale which occurred in South Dakota; second, a motion for intervention from the Farmers Cooperative Association (Farmers) which was opposed by the FDIC; third, Coones' objections to the collateral sale; and, fourth, the FDIC's motion to compel a W.R.C.P. 69 deposition which was opposed by Coones.[6]

The district court granted the FDIC's motion to distribute the proceeds of the South Dakota cattle sale. Farmers' intervention motion was granted and the district court directed Farmers to file a complaint asserting its claims to the sale proceeds. The district court ruled that the collateral sale had not satisfied the personal judgment against Coones and dismissed his objections. Finally, the district court granted the FDIC's motion seeking to compel Coones' deposition for the purpose of identifying additional assets. The district court ordered "that there is no just reason for delay of the entry of this order as a final order in accordance with W.R.C.P. 54(b)" permitting an immediate appeal.

A notice of appeal, filed June 29, 1992, related:[7]

NOTICE is hereby given that James Albert Coones, Plaintiff in the above-entitled civil action, hereby appeals to the Supreme Court of the State of Wyoming from the Order Permitting Intervention, Sequestering and Releasing Funds and

---

6. W.R.C.P. 69 states:

Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. In aid of the judgment or execution, and in addition to the proceedings provided by statute, the judgment creditor or a successor in interest when that interest appears of record, may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules.

7. While Coones appeals from the entire order of the district court, he does not state any issue or contention challenging the intervention of Farmers. Similarly, the FDIC, which had opposed Farmers' intervention below, did not file a cross-appeal from that portion of the district court's order. Farmers did not file a brief or participate in this appeal. Any objection to the intervention must be considered waived and this court will not consider the propriety of that portion of the district court's order.

Requiring Rule 69 Deposition entered herein on June 17, 1992.

The issues identified by Coones, appellant, in his brief filed in Appeal No. 92–136 include:

1. Whether the manner in which FDIC took possession and sold Appellant's personal property precludes the collection of a deficiency from Appellant.

2. Whether the failure to comply with Wyoming's Notice of Right to Exemption Statutes eliminates any further enforcement of FDIC's judgment.

3. Whether failure to provide Appellant with the documents concerning his right to claim exemptions prior to this seizure and sale of his personal property violated his due process rights.

Appellee, the FDIC, responds:

1. Is the FDIC barred from further enforcement of its Judgment by the manner of its post-Judgment disposition of the Appellant's collateral?

2. Is the FDIC barred from further enforcement of its Judgment by its alleged failure to provide the Appellant notice of right to claim exemptions?

3. Was the Appellant deprived of due process by the FDIC's alleged failure to provide the Appellant notice of right to claim exemptions?

The final action before this court originated in Campbell County. On October 5, 1990, Coones filed a complaint stating a claim on an agister's lien. Coones averred that between October 20, 1988 and April 10, 1990, during the pendency of a bankruptcy petition which was involuntarily dismissed, he had acted as a "debtor-in-possession" of certain personal property of the estate and was entitled to a recovery of reasonable, necessary costs and expenses of preserving, or disposing of, such property under 11 U.S.C. § 506(c). Coones claimed he was owed $150,780.49 plus interest.

The FDIC responded to the complaint with a motion to dismiss filed on December 11, 1990. Styled as a W.R.C.P. 12(b)(6)

motion to dismiss for failure to state a claim upon which relief can be granted, the FDIC contended the complaint was barred by *res judicata* due to the fact that the relief requested had already been denied by the United States Bankruptcy Court for the District of Wyoming. The FDIC also stated that the complaint should be dismissed because it stated a compulsory counterclaim which arose out of the transaction that was the subject of the pending litigation in Campbell County, Civil Action No. 17324, the action that resulted in the first appeal in this series. Finally, the FDIC argued that the complaint should be dismissed for failure to join indispensable parties, Cindy Lee Coones and Randy L. Royal. Randy L. Royal was the trustee of the bankruptcy estate of Cindy Lee Coones.

The district court ordered the complaint dismissed, with prejudice, for failure to state a claim upon which relief could be granted. W.R.C.P. 12(b)(6). Coones filed a motion for reconsideration contending that the statute of limitations, Wyo.Stat. § 29–7–104(a)(iii) (1981), required a lien foreclosure action be filed within six months of the filing of an agister's lien. He also argued that no counterclaim could be asserted in the pending litigation in Campbell County, Civil Action No. 17324, because that court was still considering a motion to dismiss and no answer or counterclaim had been filed by Coones. The district court denied the motion for reconsideration. A notice of appeal was filed February 5, 1992, which stated:

NOTICE is hereby given that James Albert Coones, Plaintiff in the above-entitled civil action, hereby appeals to the Supreme Court of the State of Wyoming from the Order Dismissing Plaintiff's Complaint entered herein on May 20, 1991, and from the Order Denying Plaintiff's Motion for Reconsideration entered herein on January 30, 1992.

This interim appeal, filed by Coones, was rejected by this court. The district court then issued, on March 30, 1992, an amended order dismissing Coones' complaint.[8]

---

8. The disposition of a claim for attorney's fees illustrates the complex nature of this litigation.

In the FDIC's motion to dismiss, a claim for

Another notice of appeal was filed which provides the source of our present jurisdiction:

NOTICE is hereby given that James Albert Coones, Plaintiff in the above-entitled civil action, hereby appeals to the Supreme Court of the State of Wyoming from the Amended Order Dismissing Plaintiff's Complaint entered herein on March 30, 1992.

In Appeal No. 92–90, we find the issues stated by Coones to be:

1. Was this action a compulsory counterclaim in the companion case (Case No. 91–[2]65).

2. Are Cindy Lee Coones and the Chapter 7 Trustee appointed to administer her Bankruptcy Estate "indispensable parties" to this action.

3. Whether the doctrines of *Stare Decisis*, Law of the Case and Judicial Estoppel should have determined the issue of indispensable parties.

4. May the District Court consider matters not a part of the pleadings before it in considering a Rule 12(b) Motion.

5. Does a litigant's cause of action merit dismissal for his filing a motion for peremptory disqualification under W.R.C.P. 40.1.

Appellee, the FDIC, states the issues as:

1. Does the Court lack jurisdiction over this appeal?

2. Did the district court properly dismiss the Appellant's Complaint because it brought claims that should have been brought as compulsory counterclaims in another case?

3. Did the district court properly dismiss the Appellant's Complaint because he failed to join indispensable parties?

Sorted out, there are three determinative inquiries from these complex events and contentions:

1. Whether the processes, procedures and activities of the FDIC in obtaining possession and liquidating the chattel collateral forecloses rights to a deficiency judgment.

2. Whether the trial court erred in distributing the proceeds and directing a debtor's deposition following a post-judgment hearing.

3. Whether the debtor was precluded from asserting, in an independent lawsuit, any agister's lien claim for maintenance of the assets, including cultivation and husbandry, following the debtor's neglect to present the issues in the replevin-judgment action; or by *res judicata* in the bankruptcy court; or failure to join indispensable parties when each of these issues were raised and determined by entry of a W.R.C.P. 12(b)(6) dismissal for failure to state a claim.

## II.  FACTS

Coones is a Wyoming rancher. The succession of financial failures which developed into this litigation began with a bitter divorce proceeding in 1983. As a result of the divorce settlement, Coones mortgaged his ranch to the Mutual Life Insurance Company of New York (MONY). The borrowed funds were used to purchase the

relief, in the nature of an affirmative request, was added:

WHEREFORE, the Defendant, Federal Deposit Insurance Corporation, as Receiver for Stockmen's Bank and Trust Company, requests that this Court dismiss Plaintiff's Complaint with prejudice, *for costs and reasonable attorney's fees* incurred in defending this action[.]

(Emphasis added.)

The district court, in its order dismissing plaintiff's complaint, included:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Court will consider an award of costs and attorney fees to the Defendant upon submission of an itemized account of said expenditures.

Coones filed his motion for reconsideration which was rejected by order dated January 21, 1992 and entered January 30, 1992. An amended order dismissing Coones' complaint was entered March 30, 1992, which resolved the question of the affirmatively requested award by stating:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that after considering the proposed judgment awarding Defendant costs and attorney's fees that such costs and attorney's fees are not appropriate.

The FDIC has not filed a cross-appeal on this issue of attorney's fees, so no consideration will be given to this claim.

portion of the ranch awarded to the former wife.

In 1986, Coones, remarried to Cindy Lee Coones, executed the three promissory notes which are the subject of this litigation. The first promissory note was executed on April 8, 1986 by Coones with the First National Bank of Sheridan, Wyoming (hereinafter "Sheridan Note"). The principal amount was $45,000 with an interest rate of 14.5 percent per annum. A previously executed security agreement stated that the collateral for future advances would be: "All oil field equipment now owned or hereafter acquired * * *." [9] The security agreement stated as a specific remedy upon default: "In the event of default under this agreement the Debtor and the Secured Party have the rights and remedies provided in Article 9 of the Uniform Commercial [C]ode and, in addition, those provided in this agreement."

The second promissory note was executed on May 16, 1986 by Coones and Cindy Lee Coones with the Stockmens Bank and Trust Company of Gillette, Wyoming (hereinafter "Stockmens Note 1"). The principal amount was $400,000 with a variable interest rate adjusted monthly. The combination promissory note/security agreement stated that the purpose of credit was "Business: Renewal & Purchase" and that this was a "Purchase Money Loan" for farming operations. The loan was secured by a combination of a second position real estate mortgage and chattel collateral. [10]

**9.** Attached to the security agreement was a specific listing of equipment which included:

| | |
|---|---:|
| Mod. 900 Versatile 4 × 4 Tractor S.N. 0300983 with 14' Leon Dozer Blade S.N. 16774–801 | 35,000.00 |
| 9 yds. Bucyrus Scraper S.N. 5–91–63723 | 9,500.00 |
| 1966 Auto Car Winch Truck V.I.N. 58288 | 12,000.00 |
| 1969 Peterbilt Tractor V.I.N. 33692K | 12,000.00 |
| 1971 580 CK Case Backhoe S.N. 8676724 | 10,000.00 |
| 1971 Fruhauf Lowboy Trailer FWM 764707 | 8,500.00 |
| 1968 Garwood Belly dump V.I.N. 2–204 | 2,000.00 |
| 1975 400 Amp Hobart Welder & Trailer S.N. 10–4W–4716 | 2,500.00 |
| 1957 6 yd Challenge Cement Mixer | 1,000.00 |
| 1978 Thuren Sprayer Washer on Trailer S.N. 69–10–23–03 | 1,000.00 |
| 1956 Trailermobile 40' flatbed V.I.N. D.R.638638 38' Oil field float | 1,000.00 |
| | $94,500.00 |

Another previously executed security agreement between First National Bank of Sheridan and Coones, with the same material terms and dated March 28, 1983, covered much of the same property.

An appraisal as of April 1, 1991 listed the value of this collateral as $39,700.

**10.** The agreement specified:

(e) [x] If checked, this Note is secured by the Security Agreement hereafter and Borrower hereby grants to the Lender a Security Interest under the Uniform Commercial Code in the following described Collateral:

[x] INVENTORY: All inventory of the Borrower, whether now owned or hereafter acquired and wherever located.

[x] EQUIPMENT: All equipment of the Borrower, whether now owned or hereafter acquired, including but not limited to all present and future machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts and tools, and the goods described in any equipment list or schedule herewith or hereafter furnished to Lender by Borrower (but no such schedule or list need be furnished in order for the Security Interest granted herein to be valid as to all Borrower's equipment).

[x] FARM PRODUCTS: All farms products of the Borrower, whether now owned or hereafter acquired including but not limited to (i) all poultry and livestock and their young, products thereof and produce thereof, (ii) all crops, whether annual or perennial, and the products thereof and (iii) all feed, seed, fertilizer, medicines and other supplies used or produced by Borrower in farming operations.

[x] ACCOUNTS AND OTHER RIGHTS TO PAYMENT: Each and every right of the Borrower to the payment of money, whether such right to payment now exists or hereafter arises, whether such right to payment arises out of a sale, lease or other disposition of goods or other property by the Borrower, out of a rendering of services by the Borrower, out of a loan by the Borrower, out of the overpayment of taxes or other liabilities by the Borrower or otherwise arises under any contract or agreement, whether such right to payment is or is not already earned by performance, and howsoever such right to payment may be evidenced, together with all of the rights and interest (including all liens and

The promissory note/security agreement stated the following remedies on default:

REMEDIES: In the event of Default under the Terms and Conditions of this Note, Lender shall have all the rights under the Uniform Commercial Code to realize on the Collateral. These rights include the right to take possession of the Collateral, and to require the Borrower to make the Collateral available to the Lender at a place to be designated by the Lender which is reasonably convenient to both parties. The Borrower and the Lender agree that as to any reasonable notice requirement under the Uniform Commercial Code, that such reasonable notice requirements shall consist of seven days written notice mailed to the last known address of the Borrower. Expenses of retaking, holding, preparing for sale, selling or the like will first be paid from the proceeds before the balance will be applied toward the indebtedness.

security interest) which Borrower may at any time have by law or agreement against any account debtor or other obligor obligated to make any such payment or against any of the property of such account debtor or other obligor; all including but not limited to all present and future debt instruments, chattel papers, accounts, loans and obligations receivable and tax refunds.

[x] GENERAL INTANGIBLES: All general intangibles of the Borrower, whether now owned or hereafter acquired, including but not limited to, applications for patents, copyrights, trademarks, trade secrets, good will, trade names, customer lists, permits and franchises, and the right to use Borrower's name.

[x] In addition to any property generally described above, the following Collateral:

ALL INVENTORY OF CATTLE, HORSES, AND ALL OTHER LIVESTOCK, ALL FARM PRODUCTS OF CATTLE, HORSES, AND ALL FARM EQUIPMENT AND MACHINERY, OTHER EQUIPMENT AND MACHINERY, INVENTORY, FARM PRODUCTS, HAY, GRAIN, CROPS, CROP INVENTORY AND CROP FARM PRODUCTS, VEHICLES, ACCOUNTS, CONTRACT RIGHTS, OR GENERAL INTANGIBLES ARISING FROM THE SALE OR DISPOSITION OF PRODUCTS THEREOF NOW OWNED OR HEREAFTER ACQUIRED AND WHEREVER LOCATED.

together with all parts, accessories, repairs, improvements and accessions thereto; and proceeds, products and issue therefrom now or hereafter at any time made or acquired.

The third promissory note was also executed on May, 16, 1986 by Coones and Cindy Lee Coones with the Stockmens Bank and Trust Company of Gillette, Wyoming (hereinafter "Stockmens Note 2"). The principal amount was $70,017 with a variable interest rate. The combination promissory note/security agreement stated the purpose of the credit was business operating expenses for farming operations. Unlike Stockmens Note 1, the Stockmens Note 2 agreement does not indicate it is a purchase money loan. The loan, however, was secured by the same chattel collateral as Stockmens Note 1 and a financing statement was filed on May 19, 1986 with the Campbell County Clerk. Both Stockmens Note 1 and Stockmens Note 2 used identical language to describe the collateral and the remedies upon default.

The payment records of the notes show that Coones made some payments during 1986 on Stockmens Note 2 and borrowed additional amounts. No payments are recorded on either Stockmens Note 1 or Sher-

On May 16, 1986, the Stockmens Bank and Trust Company of Gillette executed a separate security agreement which restated the material terms of the combination promissory note/security agreement. A specific attachment listing various items of collateral was made a part of this document. This list included specific farm vehicles and equipment. Also listed were the following livestock:

| LIVESTOCK: | BRANDS: |
| --- | --- |
| 40 Angus Heifers—yrlgs. | [Shown] |
| 160 Angus Cows 3's & up | |
| 5 Bulls (1 Herford [sic] & 4 Angus) | |
| 5 Horses | |

all located 38 miles N.W. of Gillette on Spotted Horse Creek.

On May 30, 1986, the Stockmens Bank and Trust Company of Gillette filed a financing statement with the Campbell County, Wyoming Clerk covering property described as:

ALL FARM PRODUCTS OF CATTLE, HORSES, FARM PRODUCTS, HAY, GRAIN, CROPS, CROP INVENTORY AND CROP FARM PRODUCTS, CONTRACT RIGHTS, ASSIGNMENT OF FEDERAL CROP INSURANCE, ASSIGNMENT OF COMMODITY CREDIT CORPORATION PROCEEDS, ARISING FROM THE SALE OR DISPOSITION OF PRODUCTS THEREOF, NOW OWNED OR HEREAFTER ACQUIRED AND WHEREVER LOCATED.

An appraisal as of April 1, 1991 listed the value of the collateral as $165,900.

idan Note. Eventually, Coones defaulted on all three notes. By the time Coones defaulted, the FDIC, in its capacity as the successor in interest of both banks, had control of the assets of the two banks.[11]

Coones and Cindy Lee Coones also defaulted on the mortgage to MONY during this time period. A separate foreclosure action resulted in a summary judgment in favor of MONY and an order to sell the ranch to satisfy a judgment of $994,097.05. Coones and Cindy Lee Coones then filed a petition in bankruptcy for a Chapter 11 reorganization stalling the foreclosure sale. *See In re James A. Coones and Cindy Lee Coones,* No. 88–05343–B (Bankr.Wyo. Oct. 20, 1988).[12] The two major creditors of the bankruptcy proceeding were MONY and the FDIC.

Following a bankruptcy court order of dismissal, *see In re James A. Coones and Cindy Lee Coones,* No 88–05343–B, Order On Motions To Dismiss (Bankr.Wyo. March 29, 1990), the FDIC proceeded with the action that became Appeal No. 91–265 on April 20, 1990. Along with its complaint, the FDIC filed two motions requesting writs of replevin without notice or hearing.

11. On July 17, 1986, the First National Bank of Sheridan failed, among the "assets" purchased by the FDIC in its corporate capacity was the Sheridan Note. Stockmens Bank and Trust Company of Gillette failed on September 18, 1987 at which time the FDIC assumed control of Stockmens Note 1 and Stockmens Note 2.

12. On April 13, 1990, Cindy Lee Coones converted the portion of the proceeding involving her from a Chapter 11 reorganization to a Chapter 7 liquidation.

13. The FDIC did not post a surety bond pursuant to 28 U.S.C. § 2408 which, in part, provides:

Security for damages or costs shall not be required of the United States, any department or agency thereof or any party acting under the direction of any such department or agency on the issuance of process or the institution or prosecution of any proceeding.

14. Issues of this case and the involved bankruptcy proceeding have previously been before this court by certification from the United States District Court for the District of Wyoming. In *Coones v. Federal Deposit Ins. Corp.,* 796 P.2d 803, 803–04 (Wyo.1990), we were provided three questions for decision as a part of the bankruptcy appeal:

The first motion sought a writ of replevin for approximately $62,515.27 in a Key Bank of Gillette, Wyoming account. A supporting affidavit from a FDIC account officer claimed the money was proceeds from the sale of Coones' secured cattle. On April 20, 1990, a writ of prejudgment replevin was issued directing the Sheriff of Campbell County to take possession of the funds in the bank account.[13] The Sheriff filed a return indicating that $62,963 was seized.

The FDIC's second motion for a prejudgment writ of replevin for the remaining property identified in the security agreements was not immediately granted. Instead, the district court issued an order for a hearing and order to show cause directing Coones and Cindy Lee Coones to appear at an April 25, 1990 hearing on the matter. This hearing was never held because two days before it was scheduled, the United States Bankruptcy Court for the District of Wyoming issued an order staying "all proceedings or actions to foreclose or repossess the property of James A. Coones by MONY or FDIC" during the pendency of a federal court appeal.[14] *In re*

1. May a husband and wife each claim as exempt $2,000.00 of tools of trade under W.S. § 1–20–106(b) (for a total of $4,000.00) when both are involved in the same occupation.

2. May a rancher or farmer claim as exempt 75% of the proceeds derived from the sale of non-purchase money livestock under W.S. § 1–15–408.

3. May a rancher or farmer claim as exempt 75% of the value of the crops and livestock offspring planted or born after the perfection of a security interest under W.S. § 1–15–408.

The court, in answering the three questions, determined that the total $4,000 exemption was available and rejected the claimed exemption of seventy-five percent of the proceeds derived from the sale of the non-purchase money livestock and seventy-five percent of the value of crops and livestock after the perfection of the security interest.

In the bankruptcy proceeding, no timely objection to the claimed exemption of seventy-five percent of livestock acquired and crops grown after 1986 had been made. *See In re Coones,* 954 F.2d 596 (10th Cir.), *cert. granted & judgment vacated* — U.S. ——, 113 S.Ct. 31, 121 L.Ed.2d 4 (1992). The bankruptcy court denied Coones' claimed exemption despite the lack of timely objection by ruling that the exemptions

*James A. Coones and Cindy Lee Coones*, No. 88–05343–B (Bankr.Wyo. April 23, 1990).

The state court action continued only after the stay pending the appeal in bankruptcy was lifted for a limited purpose. IT IS FURTHER ORDERED, ADJUDGED and DECREED, that the FDIC may proceed in any Court of competent jurisdiction to foreclose its security interest in the Debtor's property or to take any other appropriate action which may be available to the FDIC as concerns the Debtor's collateral without further recourse from the Debtor in this Court.

*In re James A. Coones and Cindy Lee Coones*, No 88–05343–B, Order Granting FDIC Relief From Order Staying Execution Pending Appeal (Bankr.Wyo. October 25, 1990). When the bankruptcy stay was lifted, the state district court held a hearing on the FDIC's pending motion for a writ of replevin. The district court determined that a preliminary injunction would be issued to preserve the collateral and would be issued "in lieu of pre-judgment replevin remedies * * *." The preliminary injunction specifically prohibited "encumbering, hypothecating, spending, disposing of, or otherwise transferring any personal property of the Defendants in which the Plaintiff has claimed an interest * * *," including the cattle sale proceeds.

Eleven months later, the district court granted summary judgment in favor of the FDIC, denied a partial summary judgment in favor of Coones and denied the FDIC's motion to dismiss a counterclaim filed by Coones. Finding that there were no genuine issues of material fact and that the FDIC was entitled to judgment as a matter of law, the district court ordered a judgment entered in favor of the FDIC. The terms create a personal judgment against Coones for the full amount of the debt and give the FDIC possession of the collateral with an additional contingent personal judgment if the collateral is not delivered. Both the contingent judgment and the right to possession of the collateral are in addition to the judgment on the debt, with no provision for offset:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that judgment be entered herein in favor of Plaintiff, Federal Deposit Insurance Corporation, as Liquidator for the First National Bank of Sheridan, and as Receiver of the Stockmens Bank and Trust Company, and against Defendant, James Albert Coones as follows:

1. As to Plaintiff's Second Cause of Action, for unpaid principal in the sum

---

had no valid state law basis. The United States District Court affirmed that result in *Coones v. FDIC*, No. C–89–243K. The United States Court of Appeals for the Tenth Circuit also affirmed. *In re Coones*, 954 F.2d 596. The United States Supreme Court granted a petition for writ of certiorari, vacated the judgment and remanded for further consideration in light of *Taylor v. Freeland & Kronz*, 503 U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). *Coones v. F.D.I.C.*, —— U.S. ——, 113 S.Ct. 31, 121 L.Ed.2d 4 (1992). In *Taylor*, a 1992 United States Supreme Court decision authored by Justice Thomas, the court adopted a bright line rule applying the plain language of the appropriate Bankruptcy Rule 4003(b) to require filing of the objection to the exemption within thirty days or it is waived.

We reject [bankruptcy trustee's] argument. [Bankrupt] claimed the lawsuit proceeds as exempt on a list filed with the Bankruptcy Court. Section 522(1), to repeat, says that "[u]nless a party in interest objects, the property claimed as exempt on such list is exempt." Rule 4003(b) gives the trustee and creditors 30 days from the initial creditors' meeting to object. By negative implication, the Rule indicates that creditors may not object after 30 days "unless, within such period, further time is granted by the court." The Bankruptcy Court did not extend the 30–day period. Section 522(1) therefore has made the property exempt. [Trustee] cannot contest the exemption at this time whether or not [Bankrupt] had a colorable statutory basis for claiming it.

*Taylor*, —— U.S. at ——, 112 S.Ct. at 1648.

We do not anticipate what the remand to the United States Court of Appeals for the Tenth Circuit may mean to these state court proceedings or any right of exemption of the bankrupt beyond the $4,000 property amount. Obviously, the Wyoming Supreme Court in *Coones*, 796 P.2d 803 only answered a hypothetical inquiry in regard to issues number two and number three. It may be ultimately determined by the federal courts that the failure to object preclusively established the right to the claimed exemptions without regard for the colorable status under state law. How such a determination might be put into effect is not any subject for our decision.

of Forty Thousand and 00/100 ($40,-000.00) Dollars plus accrued interest in the sum of Twenty Seven Thousand Eight Hundred Twenty Four and 09/100 ($27,824.09) Dollars calculated at 14.5% through July 17, 1991, together with interest accruing therefrom and thereafter at the rate of $15.890410 per day until paid in full.
2. As to Plaintiff's Third Cause of Action, for unpaid principal in the sum of Four Hundred Thousand and 00/100 ($400,000.00) Dollars plus accrued interest in the sum of Two Hundred One Thousand Seventy Three and 42/100 ($201,073.42) Dollars calculated at a present rate of 8.35% through July 17, 1991, together with interest accruing therefrom and thereafter at the rate of $91.506 per day until paid in full.
3. As to Plaintiff's Fourth Cause of Action, for unpaid principal in the sum of Sixty Three Thousand Nine Hundred Ninety One and 80/100 ($63,-991.80) Dollars plus accrued interest in the sum of Thirty Six Thousand Four Hundred Eight and 10/100 ($36,408.10) Dollars calculated at 8.5% through July 17, 1991, together [with] interest accruing therefrom and thereafter at the rate of $14.902200 per day until paid in full.
4. For attorneys' fees and costs in the amount of $47,336.62 together with post-judgment interest thereon at the rate of ten (10%) percent per annum until paid in full.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff, Federal Deposit Insurance Corporation, as Liquidator for the First National Bank of Sheridan, and as Receiver of the Stockmens Bank and Trust Company, recover from Defendants, James Albert Coones and Cindy Lee Coones f/k/a Cindy Lee Jones, possession of that certain personal property described as follows:

[Security descriptions omitted] [15]

in substantially as good condition as it was when this action commenced, normal wear and tear excepted. And if delivery thereof cannot be had, that Plaintiff recover from the Defendants, James Albert Coones and Cindy Lee Coones f/k/a Cindy Lee Jones, the sum of Five Hundred Thirty Four Thousand Three Hundred Forty Four and 45/100 ($534,344.45) Dollars, the value of the property, in addition to the sums set forth in the Plaintiff's Second, Third and Fourth Causes of Action and attorneys' fees set forth above, for all of which execution may issue.

Also entered with the judgment were four post-judgment writs of replevin for delivery of property.[16] Sheriff's officers in two Wyoming and two South Dakota counties were directed to seize the property contained in the general and specific security agreement descriptions or seize "the sum of Five Hundred Thirty Four Thousand Three Hundred Forty Four and 45/100 ($534,344.45) Dollars, the value of the property, in case possession thereof cannot be obtained * * *." The seized property was turned over to the FDIC.

With the seized collateral in its possession, the FDIC mailed a notice of sale to Coones on November 21, 1991 (hereinafter November 21st Notice), which stated, in part:

This is to advise you that the FDIC will be conducting a public sale on the attached items which we gained possession of pursuant to the Writs of Replevin issued by Judge O'Brien on October 29, 1991. The items will be sold and proceeds will be applied to the debts that you have with the FDIC as Receiver for Stockmens Bank & Trust Company and as Liquidator for the First National Bank of Sheridan. Dickensheet & Associates

---

15. The district court provided a detailed listing of the various security agreement property descriptions, including both the general and specific descriptions. The security description covers almost three legal size pages, single spaced.

16. The FDIC's trial counsel prepared the "Order (1) Granting Plaintiff's Motion for Summary Judgment, (2) Denying Defendants' Motion for Partial Summary Judgment and (3) Denying Plaintiff's Motion to Dismiss" and the four post-judgment documents styled as "Writ of Replevin for Delivery of Property."

will be conducting the sale. You will have the opportunity at that time to bid on whatever items of collateral you chose [sic] to redeem. The public sale will take place as follows:

DATE: December 14, 1991

TIME: 11:00 a.m. (Mountain Standard Time)

PLACE: Western Building Facilities, 3801 North U.S. Highway 14–16, Gillette, Wyoming 82716

TERMS OF SALE: Cash, Cashier's Check, Certified Funds, Wire Funds Transfer, Personal or Company Check with a letter of bank guarantee.

ITEMS TO BE SOLD: See Enclosed Listings

Coones filed an objection to the sale and asked that the sale be enjoined. Coones' motion was not acted upon prior to sale and no injunction was issued preventing the sale.

On December 13, 1991, one day before the sale, the FDIC placed in the United States mail a "Notice Of Right To Claim Exemptions And To Hearing" (hereinafter December 13th Notice) addressed to Coones. After the sale occurred, Coones responded to the December 13th Notice by requesting a hearing and claiming an exemption for: "Homestead, personal articles and articles used for carrying on a trade or business to the extent provided by W.S. Section 1–20–101 through Section 1–20–109[.]" After a hearing, the district court denied the exemption claim.

The remaining relevant facts will be discussed as necessary.[17]

## III. DISCUSSION

A. *Appeal No. 91–265 and Appeal No. 92–136*

In reviewing a grant of summary judgment, this court conducts an ordered re-view of the proceedings below recognizing that summary judgment is an extreme remedy. *Cordova v. Gosar*, 719 P.2d 625, 634–35 (Wyo.1986). In *Powder River Oil Co. v. Powder River Petroleum Corp.*, 830 P.2d 403, 406–07 (Wyo.1992), we summarized:

"Summary judgment is proper only when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law." *McDonald v. Mobil Coal Producing, Inc.*, 789 P.2d 866, 869 (Wyo.1990), *reh'g* 820 P.2d 986 (Wyo.1991). *See* W.R.C.P. 56(c). The court considers the record from the viewpoint most favorable to the party opposing the motion, giving all favorable inferences to be drawn from the facts contained in affidavits, depositions and other proper material appearing in the record to the opposing party. *Roth v. First Sec. Bank of Rock Springs, Wyo.*, 684 P.2d 93 (Wyo.1984) (*quoting Reno Livestock Corp. v. Sun Oil Co. (Delaware)*, 638 P.2d 147 (Wyo.1981)). Summary judgment eliminates the expense and burden of a formal trial when only questions of law are involved; however, this court must be persuaded that no material facts are in dispute and the trial court's judgment was correct as a matter of law. *Fiscus v. Atlantic Richfield*, 773 P.2d 158 (Wyo.1989). We accord no deference to and are not bound by the trial court's decisions on issues of law. *True Oil Co. v. Sinclair Oil Corp.*, 771 P.2d 781 (Wyo.1989).

The Wyoming Supreme Court "has recognized its inherent power, independent of any statutory authority, to vacate a void judgment when its invalidity is apparent on the face of the record." *Goss v. Goss*, 780 P.2d 306, 310 (Wyo.1989).

The issues before this court involve questions of the application of the Uniform Commercial Code (U.C.C.) as adopted in

---

**17.** Detailing the factual context of the various proceedings was made considerably more difficult by the lack of adequate record citations by counsel for both parties. This court has previously advised counsel "to be precise, specific and complete when making page references to the record in connection with all statements of fact relevant to the issues presented on appeal."

*Inter–Mountain Threading, Inc. v. Baker Hughes Tubular Services, Inc.*, 812 P.2d 555, 560 (Wyo. 1991). While a summary disposition of this proceeding would have forcefully established this court's disposition to strictly enforce its procedural rules, it would not have served the interests of justice.

Wyoming. Decisions from other jurisdictions offer persuasive support when questions of the interpretation and application of uniform laws are presented. *B & W Glass, Inc. v. Weather Shield Mfg. Inc.,* 829 P.2d 809, 814 (Wyo.1992). *See* Unif. Commercial Code § 9–501, 3B U.L.A. 186 (1992).

Both parties offer a tacit agreement that the judgment is contrary to law and should, at least in part, be reversed. Coones argues the summary judgment in favor of the FDIC should be reversed and remanded because it impermissibly grants the FDIC a double recovery and because a trial on issues of material fact should be required. The FDIC contends that if the judgment is incorrect, a limited remand would be sufficient to correct the "technical error" and prevent the FDIC from recovering on the notes and independently on the collateral. Both arguments ignore the problem of whether the fundamental action, from which this challenged judgment results, permitted the multiple remedies obtained and whether this court must find in the chosen procedure and implementation of the FDIC an explicit or implicit limitation on the range of available remedies which requires a modification of this judgment as a matter of law.[18]

■ It is undisputed that the FDIC was the successor in interest as the secured party. It is also undisputed that Coones defaulted on the repayment of the Sheridan Note, Stockmens Note 1 and Stockmens

Note 2.[19] Default permitted the secured party to act to enforce the rights and remedies provided at law in the security agreements and the promissory notes. The agreements between the parties provided security for the lenders, including after-acquired property and accounts. In signing the documents, Coones agreed to the terms and accepted the broad descriptions of collateral. In reviewing the record, we agree with the district court that there are no issues of material fact still in dispute. However, a summary judgment is only appropriate when there is no genuine issue as to any material facts and the moving party was entitled a judgment as a matter of law. W.R.C.P. 56(c). The summary judgment in favor of the FDIC must be reversed and remanded because it granted relief beyond that which the secured party was entitled to as a matter of law. *Cordova,* 719 P.2d at 636. The FDIC recovered more than the amount of its damages by recovering both a personal judgment for the full amount of the debt on the promissory notes and possession of the chattel collateral.

In the event of default, all of the relevant documents contained language stating the agreement between the parties that the rights and remedies available to both the debtor and the secured party were those contained in Article 9 of the U.C.C.[20] While remedies in the U.C.C. are broadly stated, commentators recognize the unwary may find a unanticipated price attached to improvident liquidation activities.

---

18. On appeal, the FDIC argues, without citation to any authority, that events occurring after the judgment are not properly before this court. We partially agree. The district court retained jurisdiction over that portion of the litigation which was not affected by the summary judgment. However, we have only considered those portions expressly determined to have "no just reason for delay" under W.R.C.P. 54(b). The judgment issued in Appeal No. 91–265 obviously includes the events related to the amended order nunc pro tunc of December 9, 1991 and the events involved in the order to amend the order of March 9, 1992. *Wyoming Nat. Bank of Gillette v. Davis,* 770 P.2d 215, 217 (Wyo.1989); *Spomer v. Spomer,* 580 P.2d 1146 (Wyo.1978). Even if events following the summary judgment were not properly before the court from Appeal No. 91–265, those events were before the court from the consolidated Appeal No. 92–136 which

specifically concerned itself with the propriety of the disposition of the collateral.

19. "Default" is not defined by the U.C.C. or other law. John M. Burman, *Lender Liability in Wyoming,* XXVI Land & Water L.Rev. 707, 753 (1991). Default is determined by the agreement of the parties, common law including the limitations imposed by the unconscionability doctrine and the good faith requirements of the U.C.C. 2 James J. White & Robert S. Summers, *Uniform Commercial Code* § 27–2 (3d ed. 1988). *See* Wyo.Stat. § 34.1–1–203 (1991).

20. The FDIC, in an argument without merit, had contended that the choice of remedies was not governed by the U.C.C. We hold that the documents executed by the parties regarding remedies are directory and definitive and, thus, controlling.

Default is the event which calls the lawyer's work to task. Here his advice and draftsmanship receive the "acid test." Here, in repossessing and realizing on the collateral, the secured party must tread a narrow path to satisfy his claim and yet avoid tort and statutory liability.

2 James J. White & Robert S. Summers, *Uniform Commercial Code* § 27–1 at 561 (3d ed. 1988).

The U.C.C. provisions on default begin with Wyo.Stat. § 34.1–9–501 (1991) (hereinafter § 9–501). The provisions permit the secured party some choices. For example, when a security agreement covers both real and personal property, such as Stockmens Note 1, the secured party may proceed under provisions of the U.C.C. as to the personal property. § 9–501(d). The FDIC made the choice to proceed against the personal property collateral of Stockmens Note 1 in the "Fourth Claim For Relief" stated in its complaint. While the rights and remedies are cumulative, § 9–501(a), "at some point the secured creditor must choose which remedy he will utilize and pursue that route to fruition." 2 White & Summers, *supra*, § 27–4 at 572.[21] *See Tanenbaum v. Economics Laboratory, Inc.*, 628 S.W.2d 769, 771–72 (Tex.1982) (stating legislative intent that creditor make a choice to proceed with sale of collateral under § 9–504 or retain the collateral in satisfaction of debt under § 9–505).

This court commented on the "five *principal* remedies given to the secured party on default" in *Eggeman v. Western Nat. Bank*, 596 P.2d 318, 321 (Wyo.1979) (emphasis added). In the illustrative list, we recognized the secured party may choose:

1. Use of the real estate mortgage foreclosure procedures if the security agreement covers both real and personal property. * * *

2. With reference to accounts receivable, * * * collect the same from those obligated thereon. * * *

3. Any special remedy provided in the security agreement. * * *

4. Take possession of the collateral without judicial process and either accept it in full satisfaction or sell it. * * * A sale under this remedy must be commercially reasonable. * * * This is the remedy most commonly used. * * *

5. Take a judgment on the underlying obligation and proceed under the judgment. * * * The usual procedure for enforcement of judgments for money is set out in § 1–17–101, et seq., W.S.1977. Usually the judgment is executed on by issuance of a writ of execution. The sheriff levies the writ upon the goods and chattels of the debtor, taking them actually or constructively into his possession. The various items levied upon are then identified and are subject to valuation and inspection. If necessary, the sheriff then holds an execution sale.

*Eggeman*, 596 P.2d at 321–22 (footnotes omitted). In a more recent case, we explained that the creditor making a decision to repossess must choose from one of three alternatives: "1. Repossess the collateral and sell it. * * * 2. Repossess the collateral in satisfaction of the debt (also known as strict foreclosure). * * * 3. Obtain a judgment, then execute on the judgment, i.e., have the sheriff repossess the collateral." *Durdahl v. Bank of Casper*, 718 P.2d 23, 27 (Wyo.1986).

The FDIC did not choose an action exclusively within any of the enumerated listings of *Eggeman* or *Durdahl*. The remedy which the FDIC sought must be viewed as an effort to combine two of the *Eggeman* alternatives. The FDIC attempted to take possession of the collateral and sell it, under item number 4, but modified by the use of the judicial process of a writ of replevin; *concurrently*, the FDIC attempt-

---

**21.** White and Summers agree that a secured creditor who unsuccessfully attempts to enforce his rights by one method may pursue another method. They analyze the law to establish, however, that the secured creditor "should not be permitted to harass the debtor by simulta-neously pursuing two or more of the several avenues of attack open to him." 2 White & Summers, *supra*, § 27–4 at 572. *See Durdahl v. Bank of Casper*, 718 P.2d 23, 28 (Wyo.1986) (quoting White & Summers). We agree.

ed to obtain a judgment on the debt, under item number 5, but modified to avoid the use of an execution sale. The FDIC action may be better evaluated when viewed by its component parts. First, under the security agreement, the FDIC attempted to exercise its right to possess and sell the collateral. Second, under the promissory note, the FDIC attempted to take a judgment on the debt. The issue before us considers whether both remedies may be achieved in a single action using a procedural device, replevin prejudgment attachment, which is statutorily limited in scope.

Wyoming law permits a secured party to recover and sell the collateral under the security agreement. The secured party may then proceed with an action to recover the remaining balance due on the promissory note. The secured party proceeds with individual, sequential actions.[22] *Eggeman,* 596 P.2d at 321–22; *Stephens v. Sheridan Public Emp. Federal Credit Union,* 594 P.2d 473 (Wyo.1979). While this cumulative remedy selection is permitted by § 9–501(a), the fact that a secured party's "remedies are cumulative does not mean they can be applied simultaneously." *Farmers State Bank in Afton v. Ballew,* 626 P.2d 337, 339 (Okla.App.1981).

In *Ayares–Eisenberg Perrine Datsun, Inc. v. Sun Bank of Miami,* 455 So.2d 525, 527 (Fla.App.1984), the court held that the remedies permitted by the U.C.C. "[do] not give a secured creditor the authority to harass a debtor by pursuing contemporaneously two or more remedies * * *." Sun Bank had gained peaceful possession of a computer system which secured a promissory note in default. *Id.* at 526. The bank notified the debtors that the computer would be sold at a private sale, but before any disposition of the collateral occurred, the bank filed an action to recover on the promissory note. *Id.* The court held the

bank's action on the note was precluded and could not be resumed until compliance with the statutory requirements for disposition of the collateral.[23] *Id.* at 527.

While the *Durdahl* and *Eggeman* lists are not exclusive, we hold the FDIC's unusual *concurrent* remedy selection is not one contemplated by the U.C.C. or the statutory provisions of Wyoming law. *Durdahl,* 718 P.2d at 27; *Eggeman,* 596 P.2d at 321–22. Because this case is being remanded, we find it necessary to evaluate the individual causes of action in light of the various relevant provisions of law. We begin with the action on the security agreement for possession of the collateral. The propriety of that action determines the availability of a deficiency judgment.

One of the statutory rights or remedies provided by § 9–501 states a secured party "may reduce his claim to judgment, foreclose or *otherwise enforce the security interest by any available judicial procedure.*" § 9–501(a) (emphasis added). The disjunctive statutory authorization for "any other judicial procedure" includes those avenues of recovery permitted under state law, such as replevin prejudgment attachment. 9 William D. Hawkland, Richard A. Lord & Charles C. Lewis, *UCC Series* § 9–501:05 at 709 (1991). *See generally* Wyo. Stat. § 1–15–101 to § 1–15–511 (1988) (providing for attachment, replevin and garnishment). In Wyoming, a replevin prejudgment attachment was a recognized method of enforcing the secured party's right to possession of the collateral after default even prior to the enactment of the U.C.C. *See, e.g., Schlessinger v. Cook,* 9 Wyo. 256, 62 P. 152 (1900).

"The most important remedy available to a secured party is the right to take possession of the collateral following a debtor's default." *Karp Bros., Inc. v. West Ward Sav. & Loan Ass'n of Shamokin,* 440 Pa.

---

**22.** It has been held that the sequence may also be reversed and the creditor may choose to sue on the promissory note and recover judgment on the underlying debt without necessarily waiving possessory rights and remedies created in the security agreement. *Ceres Fertilizer, Inc. v. Beekman,* 209 Neb. 447, 308 N.W.2d 347, 349 (1981).

**23.** In *Ayares–Eisenberg Perrine Datsun, Inc.,* 455 So.2d at 527, the court noted that this case would not have been remanded if Florida followed the majority rule that failure to provide reasonable notice precludes a deficiency action. Sun Bank had failed to provide adequate notice before liquidating the collateral.

583, 271 A.2d 493, 495 (1970). Commentators indicate the "right to repossess the collateral is the secured creditor's ultimate weapon * * *." 2 White & Summers, *supra*, § 27–5 at 574. The secured creditor's immediate right to possession of the collateral upon the debtor's default is "well settled" in the law. *Citicorp Homeowners, Inc. v. Western Sur. Co.*, 131 Ariz. 334, 641 P.2d 248, 250 (1981) (collecting cases).

Wyo.Stat. § 34.1–9–503 (1991) (hereinafter § 9–503) provides, in pertinent part: "Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action." The secured party who chooses to "proceed by action" may seek a prejudgment writ of replevin as a part of an action to determine the right to possession of the property. *Platte Valley Bank of North Bend v. Kracl*, 185 Neb. 168, 174 N.W.2d 724, 727 (1970) (holding § 9–503 authorizes a se-

cured party to file action in replevin to recover possession of property when debtor defaults); *Brandywine Lanes, Inc. v. Pittsburgh Nat. Bank*, 437 Pa. 499, 264 A.2d 377, 378 (1970) (noting action in replevin is authorized by § 9–503); Barkley Clark, *The Law of Secured Transactions Under The Uniform Commercial Code*, ¶ 4.05 at 4–63 (2nd ed. 1988).

In Wyoming, the replevin prejudgment attachment remedy is a statutorily based action. *Brown v. Green*, 618 P.2d 140, 144 (Wyo.1980); *Schlessinger*, 9 Wyo. at 265, 62 P. 152. *See* Wyo.Stat. § 1–15–101 to § 1–15–511. The word "replevin" has been specifically defined to reflect the statutory limitations imposed on the action. " 'Replevin' means the procedure by which a plaintiff *in a pending action to recover possession of property* obtains redelivery of property claimed to be wrongfully taken or detained." Wyo.Stat. § 1–15–102(a)(xiii) (emphasis added). The prejudgment nature of a writ of replevin is stated in plain language. Wyo.Stat. § 1–15–103(a).[24] The

---

24. Wyo.Stat. § 1–15–103 states the general procedures necessary for a prejudgment writ of replevin:

(a) Prejudgment writs of attachment, replevin and garnishment shall be issued subject to the following conditions and circumstances:

(i) The writ shall issue only upon written motion and pursuant to a written order of the court;

(ii) The court shall not direct the issuance of the writ without notice to the adverse party and an opportunity to be heard unless it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury will result to the plaintiff before notice can be served and a hearing had thereon. A finding by the court that the plaintiff will suffer irreparable injury shall be made only if the court finds the existence of either of the following circumstances:

(A) There is present danger that the property will be immediately disposed of, concealed, or placed beyond the jurisdiction of the court; or

(B) The value of the property will be impaired substantially if the issuance of an order of attachment is delayed.

(iii) An order granted without notice authorizing the issuance of a writ shall be endorsed with the date and hour of issuance and shall be filed in the clerk's office and entered of record. The order shall define the injury and state why the injury is irreparable and why

the order was granted without notice. The order, and any writ issued pursuant thereto, shall expire within a time fixed by the court, not to exceed ten (10) days after issuance. Within the time fixed, the court may, after notice and hearing, order the writ continued in effect or the adverse party may consent that the writ may be extended for a longer period. The reasons for the extension shall be entered of record;

(iv) If the order granting the writ is issued without notice, a hearing thereon shall be set for the earliest reasonable time;

(v) At the hearing on the issuance of the writ or its continuance, the plaintiff shall have the burden of establishing the facts justifying the issuance and continuance of the writ;

(vi) On notice to the plaintiff obtaining the issuance of the writ without notice, the adverse party may appear and move dissolution or modification of the writ, and in that event the court shall proceed to hear and determine the motion as expeditiously as possible;

(vii) Any notice required under this section shall be in a form and served in a manner as will expeditiously give the adverse party actual notice of the proceeding, all as directed by the court;

(viii) In the event that property has been seized by the sheriff pursuant to the issuance of a writ without notice, the property shall be retained by him subject to the order of the court.

clear, unambiguous meaning requires no construction or statutory interpretation. *Allied–Signal, Inc. v. Wyoming State Bd. of Equalization*, 813 P.2d 214, 219 (Wyo. 1991). The legislative purpose to provide for replevin prejudgment attachment is reinforced in Wyo.Stat. § 1–15–301, which provides: "Subject to W.S. 1–15–101 through 1–15–108, after filing the complaint and *at any time before judgment*, the plaintiff in an action to recover the possession of personal property may claim the delivery of the property to him as provided in this article." (Emphasis added.)

Replevin prejudgment attachment is used in an underlying action which determines the right to possession of personal property. Wyo.Stat. § 1–15–301. In *Honeywell Information Systems, Inc. v. Demographic Systems, Inc.*, 396 F.Supp. 273, 275 (S.D.N.Y.1975), the court properly summarized the nature of the action: "Replevin, a procedure in the nature of a provisional remedy, is ancillary to an action for recovery of a chattel." The issue to be tried is "strictly whether plaintiff or defendant has the superior possessory right." *Id.* "Being purely possessory, replevin is not a proper remedy for the collection of a debt, or to recover money due on account, or to enforce a mere contractual duty." 77 C.J.S. *Replevin* § 4 at 15 (1952) (footnotes omitted).

Necessarily, the judgment in the underlying action grants possession of the disputed property to the party that successfully makes a showing of ownership or a special interest sufficient to justify possession. *Brown*, 618 P.2d at 144. *See generally*, 77 C.J.S. *Replevin, supra*, §§ 238–59. The judgment is limited in scope to avoid double

recovery. In *Brandywine Lanes, Inc.*, 264 A.2d at 379, 382, the Supreme Court of Pennsylvania held a secured party would receive a "windfall" if allowed to recover possession of the collateral and the full value of the property as damages. In Wyoming, a similar limitation was recognized in *Finance Corporation of Wyoming v. Commercial Credit Co.*, 41 Wyo. 198, 283 P. 1100 (1930). We held that a secured creditor who had already obtained possession of the collateral by a writ of replevin would not be entitled to an alternative judgment for the value of the collateral. *Id.* at 1104–05. *See also Battle Creek Bread Wrapping Mach. Co. v. Paramount Baking Co.*, 88 Utah 67, 39 P.2d 323, 324 (1934). An alternative judgment is also inappropriate when the property is in the possession or control of the court or when the capability to deliver the property is not in question. *Selected Investments Corp. v. City of Lawton*, 304 P.2d 967, 976 (Okl. 1956); 77 C.J.S. *Replevin, supra*, § 251.

■ Under the terms of the security agreements, the FDIC was entitled to enforce the security interest by choosing to obtain possession of the collateral when default occurred. § 9–501(a). Coones does not challenge, on appeal, the validity of the only prejudgment writ of replevin actually issued, for the seizure of $62,963 in a bank account.[25] The remaining secured property was effectively placed under the control of the district court by the terms of the preliminary injunction granted "in lieu of prejudgment replevin remedies." Because of the control exercised by the district court, we hold that the FDIC was not entitled to an alternative judgment for the value of

**25.** The facts indicate the account involved in this case was a "special account" established on orders of the bankruptcy court to handle proceeds from the sale of secured chattel collateral, i.e., cattle. While the propriety of the seizure was not specifically challenged on appeal, as a general rule, money, unless marked or labeled such as to be capable of identification, is not subject to an action of replevin. 77 C.J.S. *Replevin, supra*, § 12. The proper remedy, after filing a complaint in a civil action for the recovery of money, is to seek a writ of attachment as security for the satisfaction of any potential judgment. Wyo.Stat. § 1–15–201(a). *See also*

Wyo.Stat. § 1–15–103(a). Effectively, the account in this case was attached by the district court. The sheriff's return on the writ issued by the district court indicated that the account was frozen by the bank. While the funds in the "special account" were sufficiently identifiable to be subject to a writ of replevin, the FDIC did not gain "possession" until the district court ordered a disposition of the proceeds of the cattle sale, post judgment, so the writ of replevin was never utilized to give the FDIC prejudgment possession of the funds. Replevin is limited to a *tangible* asset possessory proceeding.

the collateral. *Finance Corporation of Wyoming*, 41 Wyo. 198, 283 P. 1100.

We affirm that the FDIC was entitled to possession of the collateral described in the relevant security agreements, including the after-acquired property. The FDIC was also entitled to the proceeds from the sale of secured collateral.[26] The use of a post-judgment writ of replevin to order delivery of the property was unnecessary and unreasonable.[27] Under Wyoming law, a writ of replevin is a prejudgment provisional remedy. Wyo.Stat. § 1–15–103. The entry of judgment for possession in favor of the FDIC was sufficient. Wyo.Stat. 1–16–301(a) (1988 & Cum.Supp.1992); *Murphy v. Smith Trailer Sales, Inc.*, 544 P.2d 1006, 1010 (Wyo.1976). After proper service, which did not occur in a timely fashion, the judgment would have been enforceable by means of contempt proceedings, if necessary.[28] 49 C.J.S. *Judgments* § 585 (1947 & Cum.Supp.1992).

Once the secured party exercises a right to possess the collateral, after default, Wyo.Stat. § 34.1–9–504 (1991) (hereinafter § 9–504) states the secured party's right to dispose of the collateral and the effect of the disposition.[29] The "liberal rules" of

**26.** The proceeds from the sale of secured collateral included the $62,963 subject to the initial writ of replevin and the additional sums resulting from the sale of secured cattle in South Dakota. In its June 17, 1992, "Order Permitting Intervention, Sequestering and Releasing Funds and Requiring Rule 69 Deposition," the district court ordered distribution of $231,933.89 in proceeds to the FDIC. The district court maintained control of $69,300 in proceeds claimed by Farmers which is subject to continuing proceedings.

**27.** The post-judgment writs of replevin issued to individual South Dakota Sheriffs were improper and unenforceable. *See* Uniform Enforcement of Foreign Judgments Act, Wyo.Stat. § 1–17–701 to § 1–17–707 (1988).

**28.** Veteran practitioners may recognize a less formal method of enforcement, providing the sheriff with a copy of the judgment and requesting enforcement. Without a statutory basis for enforcement or court order, we offer no comment on the validity of this procedure, but recognize the voluntary compliance it is likely to achieve. The availability of a resort to contempt provides incentive for that "voluntary compliance" (or compliasence). (*See Rivera v. State,* 846 P.2d 1 (Wyo.1993) (No. 91–223, decided 1/7/93), Urbigkit, J., dissenting).

**29.** Section 9–504 provides:

(a) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. Any sale of goods is subject to the article on sales (article 2). The proceeds of disposition shall be applied in the order following to:

(i) The reasonable expenses of retaking, holding, preparing for sale or lease, selling, leasing and the like and, to the extent provided for in the agreement and not prohibited by law, the reasonable attorney's fees and legal expenses incurred by the secured party;

(ii) The satisfaction of indebtedness secured by the security interest under which the disposition is made;

(iii) The satisfaction of indebtedness secured by any subordinate security interest in the collateral if written notification of demand therefor is received before distribution of the proceeds is completed. If requested by the secured party, the holder of a subordinate security interest must seasonably furnish reasonable proof of his interest, and unless he does so, the secured party need not comply with his demand.

(b) If the security interest secures an indebtedness, the secured party must account to the debtor for any surplus, and, unless otherwise agreed, the debtor is liable for any deficiency. But if the underlying transaction was a sale of accounts or chattel paper, the debtor is entitled to any surplus or is liable for any deficiency only if the security agreement so provides.

(c) Disposition of the collateral may be by public or private proceedings and may be made by way of one (1) or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent. In other cases notification shall be sent to any other secured party from whom the secured party has received (before sending his notification to the debtor or before the debtor's renunciation of his rights) written notice of a claim of an interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized

§ 9–504 for the disposition of collateral were designed to "encourage the secured party to seek the most advantageous resale price and thus reduce the possibility and amount of any deficiency." 2 White & Summers, *supra*, § 27–9 at 590. However, § 9–504 imposes two obligations upon the secured party who chooses to "sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing." § 9–504(a). *See also* 2 White & Summers, *supra*, § 27–9 at 590. The first obligation requires the secured party send to the debtor a "reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made * * *." § 9–504(c). The second obligation requires "every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." *Id.*

■ After the proceeds of the disposition of the collateral are applied to satisfy the expenses of sale and the debt, § 9–504(a)(i), (ii) and (iii), if there is a deficiency, the secured party has a right to hold the debtor liable for that amount. § 9–504(b). In Wyoming, the secured party's compliance with the notice obligations of § 9–504(c) is a condition precedent to the recovery of a deficiency. *Stephens*, 594 P.2d at 476; *Jackson State Bank v. Beck*, 577 P.2d 168, 171 (Wyo.1978) (*quoting Aimonetto v. Keepes*, 501 P.2d 1017, 1019 (Wyo.1972)). The policy behind this court's adoption of the absolute bar approach is that it furnishes the most definite deterrent to noncompliance. Howard Foss, *The Noncomplying Secured Party's Right to a Deficiency*, 21 UCC L.J. 226, 240 (1989).[30]

Stockmens Note 1 and Stockmens Note 2 contain identical, specific provisions governing reasonable notice: "The Borrower and the Lender agree that as to any reasonable notice requirement under the Uniform Commercial Code, that such reasonable notice requirements shall consist of seven days written notice mailed to the last known address of the Borrower." While awkwardly phrased, the notice agreement was sufficient to indicate to both parties that a notice should be written and that a notice must be mailed at least seven days prior to the event. We hold this provision was commercially reasonable in the context of these transactions and should also govern the notice requirements of the Sheridan Note.

The "reasonable notice" required by § 9–504(c) is not limited, however, to just a requirement of timely performance.[31] 9

---

market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale.

(d) When collateral is disposed of by a secured party after default, the disposition transfers to a purchaser for value all of the debtor's rights therein, discharges the security interest under which it is made and any security interest or lien subordinate thereto. The purchaser takes free of all such rights and interests even though the secured party fails to comply with the requirements of this part or of any judicial proceedings:

(i) In the case of a public sale, if the purchaser has no knowledge of any defects in the sale and if he does not buy in collusion with the secured party, other bidders or the person conducting the sale; or

(ii) In any other case, if the purchaser acts in good faith.

(e) A person who is liable to a secured party under a guaranty, indorsement, repurchase agreement or the like and who receives a transfer of collateral from the secured party or is subrogated to his rights has thereafter the rights and duties of the secured party. Such a transfer of collateral is not a sale or disposition of the collateral under this article.

**30.** The author identifies three methods, the absolute bar, the set-off approach, or a rebuttable presumption, used by courts to determine whether a non-complying secured party is entitled to a deficiency under the U.C.C. Howard Foss, *supra*, 21 UCC L.J. 226. The author argues in favor of an absolute bar to recovery of a deficiency when a secured party fails to provide a debtor with an adequate notice of sale.

**31.** A number of factors affect the sufficiency of the notice, including: the debtor's knowledge concerning the sale; the means of communication used; the manner of delivery; the receipt or non-receipt by the debtor; and, the specific content of the notice including the time of sale, the public or private nature of the sale, and the place of sale. Richard C. Tinney, Annotation, *Sufficiency of Secured Party's Notification of Sale or Other Intended Disposition of Collateral Under UCC § 9–504(3)*, 11 A.L.R.4th 241, 242–243 (1982) (collecting cases).

Ronald A. Anderson, *Anderson On The Uniform Commercial Code*, § 9–504:46 to § 9–504:62 (1985). "The purpose of notice is to give the debtor an opportunity either to discharge the debt and redeem the collateral, to produce another purchaser, or to see that the sale is conducted in a commercially reasonable manner." *Buran Equipment Co. v. H & C Inv. Co., Inc.*, 142 Cal.App.3d 338, 190 Cal.Rptr. 878, 881 (1983). The underlying presumption is that the information presented is accurate. 2 White & Summers, *supra*, § 27–12 at 601.

■ The notice to Coones was defective. The November 21st Notice sent by the FDIC to Coones was mailed more than seven days prior to the December 14, 1991 sale date; however, we find this notice is defective for another reason. The November 21st Notice advised Coones of his rights: "You will have the opportunity at that time to bid on whatever items of collateral you chose [sic] to redeem." Wyoming law specifically grants a debtor the right to redeem collateral:

> At any time before the secured party has disposed of collateral or entered into a contract for its disposition under section 34.1–9–504 or before the obligation has been discharged under section 34.1–9–505(b) the debtor or any other secured party may unless otherwise agreed in writing after default redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in arranging for the sale, and to the extent provided in the agreement and not prohibited by law, his reasonable attorneys' fees and legal expenses.

Wyo.Stat. § 34.1–9–506 (1991) (hereinafter § 9–506). The November 21st Notice misrepresented Coones' right to redeem under § 9–506 by stating he would have to competitively "bid" on the collateral. The debtor need only repay the expenses of sale

and the underlying obligation secured by the collateral to redeem. *Id.* While a debtor would be free to participate in a public sale to bid on individual items, the use of the term of art "redeem" in the notice must be viewed as an attempt to abrogate statutory rights. *See* Black's Law Dictionary 1278 (6th ed. 1990) (defining "redeem" as: "To free property or article from mortgage or pledge by paying the debt for which it stood as security."). Additionally, the December 13th Notice informing Coones of his right under Wyo.Stat. 1–15–107 to claim exemptions from the sale was untimely under the parties' agreed terms. The December 13th Notice was mailed only one day before the sale.[32]

The defective notice delivered to Coones precludes the FDIC from recovering a deficiency judgment on the promissory notes. *Jackson State Bank*, 577 P.2d at 171; *Aimonetto*, 501 P.2d at 1019. As we have previously noted, the FDIC was never entitled to the "windfall" recovery of a personal judgment for the full amount due on the promissory notes in addition to possession of the collateral. *Brandywine Lanes, Inc.*, 264 A.2d at 378. The FDIC was only entitled to recover its damages, the amount of the outstanding debt and costs. After determining it would repossess the collateral, the FDIC was entitled to choose from three options:

1. Repossess the collateral, sell it and then account for any surplus or seek a deficiency judgment. § 9–504(a) and (b).

2. Repossess the collateral and propose to retain the collateral in satisfaction of the debt. § 9–505(b).

3. Obtain a judgment on the promissory note, and then execute the judgment by having the sheriff repossess the collateral, sell it and account for the proceeds. Wyo. Stat. § 1–17–308 (1988). *See Durdahl*, 718 P.2d at 27.

---

**32.** Coones argues that the failure to send timely notice of the right to claim exemptions was also a due process violation. We need not reach this issue given the failure to provide timely notice under the agreement of the parties. *See Barker*

*Bros., Inc. v. Barker-Taylor*, 823 P.2d 1204, 1208–09 (Wyo.1992) (discussing due process requirement that the party be afforded notice and a meaningful opportunity to be heard).

There is no doubt that the primary remedy sought by the FDIC was to repossess the collateral, sell it, and retain the proceeds.[33] Coones was seeking bankruptcy protection and appealing the decision affecting that action. The stay in bankruptcy, pending appeal, was lifted for the specific purpose of permitting the FDIC to proceed "to foreclose its security interest in the Debtor's property" or take any other action to obtain the collateral. *In re James A. Coones and Cindy Lee Coones*, No. 88–05343–B, Order Granting FDIC Relief From Order Staying Execution Pending Appeal (Bankr.Wyo. Oct. 25, 1990). The attempt to seek simultaneous remedies coupled with the oppressive nature of the judgment sought must be viewed as commercially unreasonable harassment which further precludes obtaining a deficiency judgment.[34] 2 White & Summers, *supra*, § 27–4 at 572. We determine that the FDIC is entitled to retain the funds it has received and any of the remaining $69,300 plus accrued interest presently retained by the clerk of the district court to which it might hereafter be determined to have priority over Farmers. However, no deficiency beyond those amounts will be granted.

These cases are remanded to the district court for entry of a judgment which conforms with this opinion.

B. *Appeal No. 92–90*

■ The appellate review that occurs when a trial court order dismisses a complaint has been frequently stated:

"According to our standard of review we will sustain a dismissal of a complaint only if it shows on its face that the plaintiff was not entitled to relief under any set of facts. In considering such a motion, the 'facts alleged in the complaint are admitted and the allegations must be viewed in the light most favorable to plaintiffs.' Dismissal is a drastic remedy, and is sparingly granted."

*Cranston v. Weston County Weed & Pest Bd.*, 826 P.2d 251, 254–55 (Wyo.1992) (quoting *Matter of Paternity of JRW*, 814 P.2d 1256, 1259 (Wyo.1991) and *Mostert v. CBL & Associates*, 741 P.2d 1090, 1092 (Wyo. 1987)).

A motion to dismiss under W.R.C.P. 12(b)(6) (hereinafter Rule 12(b)(6)) may be converted to a motion for summary judgment, W.R.C.P. 56(c), requiring sufficient notice, if matters outside the pleadings are considered. *Torrey v. Twiford*, 713 P.2d 1160, 1162–63 (Wyo.1986). Conversion is automatic when the judge considers affidavits in connection with a Rule 12(b)(6) motion. *Id.* Consideration of other materials outside the pleadings may also result in conversion. *Cranston*, 826 P.2d at 254. If conversion occurs, the resulting summary judgment may unfairly or inappropriately surprise the party without notice or a reasonable opportunity to respond. *Shriners Hospitals For Crippled Children, Inc. v. First Sec. Bank of Utah, N.A.*, 835 P.2d 350, 356 (Wyo.1992).

The complaint, filed by Coones on October 5, 1990, claimed payment was due him of $150,780.49, plus interest, for services and expenses rendered in maintaining his own property for the benefit of the FDIC as Coones' secured creditor during the pendency of the bankruptcy proceeding. Coones' prayer was for a judgment against the FDIC for the value of the services and expenses performed and foreclosure of ag-

---

**33.** Neither party directs our attention to any accounting of the proceeds from the December 14, 1991 sale. In briefing, appellant states the gross sale proceeds were $105,228. The FDIC contends, in briefing, that net sale proceeds were $81,473.94. Even with the additional $231,933.89 in cattle sale proceeds, this amount is considerably less than the $534,344.45 value which was placed on the collateral in the summary judgment. No explanation for the discrepancy is provided. Such a discrepancy could become a factor to be considered in a determination of the commercially reasonable disposition of the collateral. *See* Gary D. Spivey, An-

notation, *Uniform Commercial Code: Burden Of Proof As To Commercially Reasonable Disposition Of Collateral*, 59 A.L.R.3d 369 (1974 & Supp.1992); Michael P. Donaldson, *The Commercially Reasonable Disposition of Collateral Under Article 9 of the UCC: The Question of the Burden of Proof*, 20 UCC L.J. 307 (1988).

**34.** Our decision that the FDIC is not entitled to seek a deficiency judgment makes it unnecessary for Coones to submit to the requested deposition. W.R.C.P. 69.

ister's liens. Wyo.Stat. § 29-7-101(a)(ii) (Cum.Supp.1992). Coones filed the liens, on April 11, 1990, against personal property in his possession to secure the repayment. Coones premised his right to payment on a federal statute which is contained in the Bankruptcy Code:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

11 U.S.C. § 506(c). Coones claimed he was acting as a debtor-in-possession and that the bankruptcy estate entered into a "bailment-agistment arrangement" with Coones for which he was entitled to compensation. Attached to the complaint were lists of personal property, which the FDIC claimed an interest in, and copies of the liens filed by Coones along with itemized expense statements.

The FDIC, in its motion to dismiss, claimed the action was barred by *res judicata* because the United States Bankruptcy Court for the District of Wyoming had previously denied the claims. The FDIC contended the complaint stated a compulsory counterclaim which should have been filed in the action which became Appeal No. 91-265. Finally, the FDIC said that the complaint should be dismissed for failure to join indispensable parties, Cindy Lee Coones and the trustee of her bankruptcy estate, who claim an interest in the property which was the subject of the action. Attached to the FDIC's motion to dismiss was a pleading, in the form of a motion by Coones to the United States Bankruptcy Court for the District of Wyoming, requesting reimbursement for costs and expenses under 11 U.S.C. § 506(c). Also attached to the FDIC's motion to dismiss was a copy of an order from the United States Bankruptcy Court for the District of Wyoming which denied the motion for expenses.

We must begin with a recognition of the limits of the action filed by Coones. The complaint never avers that the rights preserved by 11 U.S.C. § 506(c) are cognizable in a state court civil action. *See* Kathleen A. Bussart, Annotation, *Authority of Congress Under Bankruptcy Clause Of Federal Constitution (Art. I § 8, CL 4) To Legislate On The Subject Of Bankruptcies—Federal Cases,* 71 L.Ed.2d 905 (1983). As part of the Bankruptcy Code, 11 U.S.C. § 506(c) is for the benefit of the bankruptcy estate, it is not intended to provide compensation for the trustee. 3 *Collier on Bankruptcy* § 506.06 at 506-56 (Lawrence P. King et al, ed. 1992). The only relief cognizable in the state court, therefore, is analogous to equitable recoupment for the claimed "bailment-agistment arrangement" and the resulting agister's liens.

The failure to aver that relief which was available in state court for a claim under 11 U.S.C. § 506(c) means the denial of the claim by the United States Bankruptcy Court for the District of Wyoming would not represent *res judicata* on the state court claim for foreclosure on an agister's liens. Our test to determine if the doctrine of *res judicata* applies requires an examination of four factors:

> "(1) identity in parties; (2) identity in subject matter; (3) the issues are the same and relate to the subject matter; [and] (4) the capacities of the persons are identical in reference to both the subject matter and the issues between them."

*Moore v. Moore,* 835 P.2d 1148, 1151 (Wyo. 1992) (quoting *CLS v. CLJ,* 693 P.2d 774, 775-76 (Wyo.1985)). While the parties are identical, the identity of the subject matter and the issues differs. The bankruptcy court could not have litigated the claim for relief under the agister's liens since the liens were not filed until after the bankruptcy proceeding was involuntarily terminated. *Buran Equipment Co.,* 190 Cal. Rptr. at 882. Therefore, the decision of the bankruptcy court could not represent *res judicata* on the right to claim the agister's liens.

We agree with the district court that the complaint in this action, at the time it was filed, must be viewed as a compulsory counterclaim. W.R.C.P. 13(a) provides:

> (a) *Compulsory counterclaims.*—A pleading shall state as a counterclaim

any claim which at the time of serving the pleading the pleader has against any opposing party, *if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim* and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction, but the pleader need not state the claim if: (1) at the time the action was commenced the claim was the subject of another pending action; or (2) the opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this rule.

(Emphasis added.) The action which became Appeal No. 91–265 was filed by the FDIC on April 20, 1990, well before this separate action commenced by Coones. Under the allegations of the complaint filed by Coones, it is evident that the October 5, 1990 action arises out of the same transaction or occurrence that is the subject matter of the FDIC's then pending claim. The liens Coones placed were attached to substantially the same property to which the FDIC claimed a right of possession. The averment that Coones was to be reimbursed for protecting the secured party's collateral reflects the obvious relationship of the actions. Coones has not demonstrated that his claim falls within one of the recognized express exceptions to the compulsory counterclaim rule. 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d*, § 1411 (2nd ed. 1990) (stating exceptions).

■ Despite the fact we agree with the district court that the complaint stated a compulsory counterclaim, we cannot affirm the district court's decision. Matters outside the pleadings were considered, both in deciding the original motion to dismiss and

the request for rehearing. The presentation and failure to exclude the pleading and order from the bankruptcy court proceeding and the district court's review of proceedings in other pending cases converted the motion to one for summary judgment. *Friedman v. United States*, 927 F.2d 259 (6th Cir.1991); *United Steelworkers of America, AFL–CIO v. American Intern. Aluminum Corp.*, 334 F.2d 147, 149 (5th Cir.1964), *cert. denied* 379 U.S. 991, 85 S.Ct. 702, 13 L.Ed.2d 611 (1965); *Ryan v. Scoggin*, 245 F.2d 54, 57 (10th Cir.1957). In the April 30, 1991 decision letter on the original motion to dismiss, the district court noted the pending litigation and stated:

> Despite all of the pending actions, the plaintiff attempted to transfer property subject to the defendant's security interest to a South Dakota corporation while Judge O'Brien's order Granting Preliminary Injunction against such transfer was in effect.

> It is clear to this Court that the plaintiff is attempting to circumvent the judicial process. The court further finds that the defendant, F.D.I.C. has diligently pursued their legal remedies in spite of the delaying actions of the plaintiff.

Coones' actions in transferring property were not at issue in the litigation before the district court and should not have been considered in the motion to dismiss. In the January 15, 1992 decision letter on the motion for reconsideration, the district court declared that it had reviewed the entire factual record of the civil action then pending between Coones and the FDIC in another Wyoming court. The district court also admitted considering the orders regarding collateral disposition made by the Eighth Judicial Circuit of the State of South Dakota. The consideration of materials outside the pleadings without proper notice of conversion to summary judgment and a reasonable opportunity to present pertinent material requires reversal.[35] *Shriners*

---

**35.** It is clear that no consideration was given to an affidavit of Cindy Lee Coones or a report of abandoned property filed by her trustee in bankruptcy which are both of record in this proceeding. Those documents declare that Cindy Lee Coones and the bankruptcy trustee had no interest in the claim asserted by Coones in this action. If these documents had been considered, Cindy Lee Coones and the bankruptcy trustee could not have been considered indispensable parties.

*Hospitals For Crippled Children, Inc.,* 835 P.2d at 356; *Torrey,* 713 P.2d at 1166–67; 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 1366 at 501 (1990).

We acknowledge that the equities of Coones' claim are weak. He incurred expenses to protect the value of the secured collateral which he had pledged on the operational agriculture loans. The collateral's value was, therefore, preserved resulting in arguably greater sale proceeds and a reduction in the amount of any potential deficiency. These actions are to the benefit of the secured creditor; however, they also benefit the debtor.[36] The role of a Rule 12(b)(6) motion is not to assess the likelihood of recovery; rather, it is merely to determine whether a claim for which relief *can* be granted has been stated. Rule 12(b)(6); 27 *Federal Procedure, Lawyers Edition* § 62:468 at 578–79 (Thomas J. Goger et al. ed. 1984).

While we reverse and remand this portion of the action, we take judicial notice that this action and the counterclaim still pending in the District Court for the Sixth Judicial District of Wyoming share common questions of law or fact. In fact, the language of the pending counterclaim is identical in all material respects to the first count of the complaint in this action. Therefore, we direct the district court, on remand, to order this action be consolidated with the counterclaim. W.R.C.P. 42(a).

## IV. CONCLUSION

The tangled history of this case disguises some simple truths. Despite the obvious financial difficulties which Coones found himself involved in, he had little difficulty in obtaining from eager lenders more credit secured by inadequate collateral. The lack of difficulty he experienced may well explain the reason that neither financial institution is in business today. Unfortunately, the FDIC, in its zeal to recover from these obvious errors, committed some of its own in selecting improper remedies. The FDIC may well have been reacting to the manner and tactics which Coones has used to preserve, restructure and even obscure his assets, despite the debt which he obligated himself to pay. Rather than being utilized to settle this dispute, the litigants have used the legal system in a most uncomplimentary manner.

Despite the many aspects and issues of this litigation resolved in appellate decision, we retreat to the determinative inquiries extracted for discussion much earlier in this opinion. We restate and answer each for clarity and conciseness:

1. Whether the processes, procedures and activities of the FDIC in obtaining possession and liquidating the chattel collateral forecloses rights to a deficiency judgment?

ANSWER: Yes.

2. Whether the district court erred in distributing the proceeds and directing a debtor's deposition following a post-judgment hearing?

ANSWER: No.

3. Whether the debtor was precluded from asserting, in an independent lawsuit, any agister's lien claim for maintenance of the assets, including cultivation and husbandry, following the debtor's neglect to present the issues in the replevin/judgment action or by *res judicata* in the bankruptcy court, or failure to join indispensable parties when each of these issues were raised and determined by entry of a Rule 12(b)(6) dismissal for failure to state a claim?

ANSWER: The Rule 12(b)(6) motion was improperly granted regarding any claim preclusion from either *res judicata* or missing indispensable parties. Other conjectures included in that proceeding are temporarily resolved by the required consolidation of that case as presented in the complaint found in Appeal No. 92–90, with

---

**36.** Under the facts pleaded by Coones regarding the bankruptcy arrangement, it is arguable that the liens and equitable claim represented "Accounts and Other Rights To Payment" subject to the terms of the security agreement governing the purchase money Stockmens Note 1. While we need not decide at this time, the agreement specifically covers liens and the rendering of services by the borrower.

the still pending counterclaims found in Appeal Nos. 91–265 and 92–136.

Caveat—We recognize this decision to be confined to the pending chattel liquidation litigation pursued in Campbell County within the jurisdiction exercised by that court over the parties, the security instruments and the promissory notes. This decision reflects no resolution of the real estate mortgage foreclosure proceeding which has been, may be or will be pursued in Sheridan County. Furthermore, the decision neither precludes, incorporates nor anticipates jurisdictional authority which may be exercised by the state court in South Dakota on any litigation independently proceeding there to judgment or future results on the bankruptcy court re-evaluation as the result of the remanded *Coones v. F.D.I.C.,* —— U.S. ——, 113 S.Ct. 31, 121 L.Ed.2d 4 (1992) decision. We have determined that the escrowed funds (subject to the Farmers' intervention claim) are the property of the FDIC which would include federal income tax results regarding any interest earned during the continuation of this litigation.

Affirmed in part; and reversed and remanded, in part, in conformity herewith.

MACY, Chief Justice, specially concurring.

I agree with the ultimate disposition of this case. I write separately, however, lest replevin be used improperly in the future. Replevin is a provisional remedy by which a claimant may obtain possession of tangible personal property pending final judgment in an action to determine possessory rights to such property. Wyo.Stat. §§ 1–15–102(a)(xiii) and 1–15–301 (1988). A provisional remedy is defined as:

> A remedy provided for present need or for the immediate occasion; one adapted to meet a particular exigency. Particularly, a temporary process available to a plaintiff in a civil action, which secures him against loss, irreparable injury, dissipation of the property, etc., while the action is pending.

BLACK'S LAW DICTIONARY 1102 (5th ed. 1979).

In this case, replevin was not used as a provisional remedy to secure against the loss of tangible personal property pending the adjudication of possessory rights. Replevin was used in the first instance to seize a bank account for the purpose of satisfying, in part, an expected money judgment. A bank account, however, represents only an intangible right to the payment of money. Intangible property rights by their very nature cannot be physically possessed and cannot serve as the subject of a writ of replevin. *See, e.g., Walther v. Central Trust Company, N.A.,* 70 Ohio App.3d 26, 590 N.E.2d 375 (1990); and *Williams Management Enterprises, Inc. v. Buonauro,* 489 So.2d 160 (Fla.Dist.Ct. App.1986). The bank account should have been attached by use of a prejudgment writ of garnishment. Wyo.Stat. §§ 1–15–401 to –425 (1988). Replevin was used in the second instance to enforce the district court's judgment directing that FDIC was entitled to have possession of the tangible personal property identified in the various security agreements. This use of replevin was clearly improper. Replevin is by definition only a prejudgment provisional remedy. The district court's judgment should have been enforced by contempt or by a writ of execution. *See* Wyo.Stat. §§ 1–17–101 to –707 (1988).

CARDINE, Justice, dissenting.

## REPLEVIN

Replevin is to obtain possession while settling a dispute over the right to possession between parties. W.S. 1–15–102(a)(xiii) (1988). Replevin is a remedy that is available to a secured creditor under the Uniform Commercial Code. W.S. 34.1–9–501 (1991). Once a party obtains lawful possession, he can then proceed with foreclosure, sale and obtain a deficiency if necessary to make him whole. W.S. 34.1–9–501, comment 6; W.S. 34.1–9–504(a) and (b) (1991). The majority improperly limits the ability of secured creditors to utilize replevin and other remedies.

The majority describes FDIC's complaint as requesting possession of collateral, judg-

ment in replevin, and a personal judgment against the debtors for the balance owed on the promissory notes. Maj. op. at 785. The majority then states: "It was not clear on the face of the complaint if these were alternative remedies." Maj. op. at 785. Therein lies my basic disagreement with the majority. I would not require a creditor to choose between these remedies. The very purpose of becoming a secured creditor under the Uniform Commercial Code (UCC) would be undermined by requiring a creditor to initially select among remedies.

By taking the steps to secure a debt, the secured creditor has earned the right to act against the collateral *and* obtain a judgment if the collateral is insufficient. Requiring the secured creditor to artificially elect his remedies removes the advantage that he had obtained by securing his debt rather than remaining an unsecured creditor. *Alamosa Nat'l Bank v. San Luis Valley Grain Growers, Inc.,* 756 P.2d 1022, 1025 (Colo.App.1988). The Uniform Commercial Code expressly provides that the remedies are cumulative.

Section 9–501 of the Uniform Commercial Code provides:

(a) *When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this part and* except as limited by subsection (c) of this section *those provided in the security agreement. He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure.* * * * A secured party in possession has the rights, remedies and duties provided in section 34.1–9–207. *The rights and remedies referred to in this subsection are cumulative.*

W.S. 34.1–9–501 (1991) (emphasis added).

The majority relies on *Ayares–Eisenberg Perrine Datsun, Inc. v. Sun Bank,* 455 So.2d 525 (Fla.App.1984) and the White & Summers treatise on the Uniform Commercial Code. The reliance is misplaced.

White & Summers indicate that creditors have several remedies, and the remedies in the Code are cumulative. James J. White & Robert S. Summers, *Uniform Commer-*

*cial Code,* § 25–4 at 1197 (3d ed. 1988) (hereinafter White & Summers). White & Summers then state that at some point the creditor must choose a remedy and pursue it to fruition and cannot lodge a "double-barreled" attack on a debtor. White & Summers, § 25–4 at 1197–98. However, White & Summers acknowledge that there is a split of authority on the election of remedies question:

But courts split on whether 9–501 authorizes a "double-barreled" attack upon the debtor. * * * However, *a number of jurisdictions allow secured parties to pursue multiple remedies simultaneously. Most of these courts reason that 9–507(1) and general obligations of good faith provide debtors with adequate protection against harassment.*

White & Summers, § 25–4 at 1198 (emphasis added).

The case the majority cites, *Ayares–Eisenberg Perrine Datsun Inc. v. Sun Bank,* 455 So.2d 525 (Fla.App.1984), holds that a secured creditor must choose a remedy and pursue that remedy to fruition before he can begin another. *Ayares,* 455 So.2d at 527. However the facts in *Ayares* make it distinguishable. The secured creditor in *Ayares* had "harassed" the debtor while attempting to collect a note secured by a computer system. The secured creditor seized the collateral and sat on it for nine months and eventually gave it away rather than selling it. *Ayares,* 455 So.2d at 526. The Florida Court of Appeals for the Third District summed up the creditor's actions:

Eleven months after repossessing the computer, three months after beginning an action directly on the note, two months after giving the computer away and three days after the denial of its motion to strike the appellants' request for an offset, Sun Bank told the appellants that if they wanted the computer back they could come get it.

*Ayares,* 455 So.2d at 526. Since no attempt at sale had taken place, the Bank's suit on the note was premature and could not be continued until fulfillment of the statutory requirements for disposition of collateral.

*Ayares* should be limited to those situations where a creditor has engaged in abusive practices. It should not be given the broad reading of the majority by limiting the creditor's ability to elect remedies. Other Florida courts of appeals have not followed the *Ayares* approach. *See Williams v. Kloeppel,* 537 So.2d 1033, 1036 (Fla.App.1988); *Land v. Cessna Aircraft Co.,* 466 So.2d 1265, 1268 (Fla.App.1985) (remedies in the UCC are to be administered liberally).

I would not follow the rationale in *Ayares.* Instead I would hold, as many other courts have, that a secured creditor need not elect remedies. I find this reasoning more persuasive:

"It has been recognized that the most important remedy available to a secured creditor is the right to take possession of the collateral following the debtor's default. A secured creditor is not required to elect a remedy. He can take any permitted action or combination of actions."

*Kimura v. Wauford,* 104 N.M. 3, 715 P.2d 451, 454 (1986) (citations omitted) (*quoting Citicorp Homeowners, Inc. v. Western Surety Co.,* 131 Ariz. 334, 641 P.2d 248, 250 (1981)). *See also Olsen v. Valley Nat'l Bank of Aurora,* 91 Ill.App.2d 365, 234 N.E.2d 547, 550 (1968).

A secured party is not required first to exhaust the collateral. A secured party in possession may proceed in a judicial action on the note and is not required to reduce itself to the position of an unsecured creditor so long as it acts in a commercially reasonable manner regarding the collateral and does not impair the position of the debtor.

*Alamosa Nat'l Bank v. San Luis Valley Grain Growers, Inc.,* 756 P.2d 1022, 1025 (Colo.App.1988). *See also Ruidoso State Bank v. Garcia,* 92 N.M. 288, 587 P.2d 435 (1978); *ITT Terryphone Corp. v. Modems Plus, Inc.,* 171 Ga.App. 710, 320 S.E.2d 784, 786 (1984); *Farmers State Bank v. Ballew,* 626 P.2d 337, 340 (Okla.App.1981); *Ingersoll–Rand Financial Corp. v. Atlantic Mgmt. and Consulting Corp.,* 717 F.Supp. 1067, 1070 (N.J.1989) (explicitly rejecting

the exclusive remedy view from *Ayares* and stating that concerns of "double-barreled" attacks were not applicable); *Ingersoll–Rand Financial Corp. v. Electro Coal, Inc.,* 496 F.Supp. 1289, 1291 (Ky. 1980). *See also Mushitz v. First Bank of South Dakota, N.A.,* 457 N.W.2d 849, 856 (S.D.1990).

The majority follows *Ayares* based in part on the notion that a creditor might receive a double recovery if he is able to collect on both the collateral and obtain a personal judgment. That is unlikely in any case, and no risk of that is present here. The district court ordered that the promissory notes be canceled as " 'merged in [the] judgment.' " Maj. op. at 786.

The court cites *Tanenbaum v. Economics Laboratory, Inc.,* 628 S.W.2d 769, 771–72 (Tex.1982) and indicates legislative intent that a creditor must choose between retention of the collateral as satisfaction under § 9–505 or proceed with sale under § 9–504. Maj. op. at 797. Of course a creditor will eventually have to make a choice between two mutually inconsistent remedies. However, it does not follow that the statute requires a choice when the remedies can be pursued simultaneously. That result is more consistent with the purpose of the UCC and its plain language.

## NOTICE

I would hold the notice of time and place of sale was sufficient, and that the notice which advised appellant that he could redeem by purchasing at the sale was essentially correct. The November 21st notice was sent via certified and regular mail and was sufficient in substance and time under the parties' agreement. The November 21st notice provided:

Dear Mr. Coones:

This is to advise you that the FDIC will be conducting a public sale on the attached items which we gained possession of pursuant to the Writs of Replevin issued by Judge O'Brien on October 29, 1991. The items will be sold and proceeds will be applied to the debts that you have with the FDIC as Receiver for Stockmens Bank & Trust Company and

as Liquidator for the First National Bank of Sheridan. Dickensheet & Associates will be conducting the sale. You will have the opportunity at that time to bid on whatever items of collateral you chose to redeem. The public sale will take place as follows: [listing date, time, place, terms of sale and items to be sold].

The notice the majority requires would be burdensome and is not required by statute. The purpose of the notice required by W.S. 34.1–9–504(c) is to inform the debtor of what will occur at the sale and what the debtor can do on *the day of the sale.* The court confuses two different time frames and holds creditors responsible for not only notifying the debtor of the sale, but also informing the debtor of what his possible options would be during the pre-sale period. This is not statutorily required. *See* W.S. 34.1–9–506 (1991). Although § 9–506 gives the debtor certain pre-sale rights, it does not require the creditor to notify the debtor of those rights. W.S. 34.1–9–506 (1991). The only notice the creditor is required to give is notice of sale under § 9–504(c) which was satisfied by the November 21st notice.

I would not hold that the November 21st notice misled Coones and was "an attempt to abrogate statutory rights." Maj. op. at 803. The phrase in the notice to which the court objects is no more than surplusage.

I also do not agree with the statement: "The attempt to seek simultaneous remedies coupled with the oppressive nature of the judgment sought must be viewed as commercially unreasonable harassment which further precludes obtaining a deficiency judgment." Maj. op. at 804. FDIC is not attempting to obtain an oppressive judgment or a double recovery. FDIC acknowledges in its brief that the proper remedy is to remand so that it does not appear that FDIC could recover in excess of what it was owed.

It is true that FDIC is not entitled to a windfall and should not receive a recovery on a personal judgment in addition to possession of the collateral if the collateral satisfied the debt. There is no realistic threat of a windfall to FDIC in this case, and there would not be that threat in any case. A deficiency judgment is always limited to what the creditor did not receive after sale of the collateral.

For the reasons stated herein I respectfully dissent.